**FRIENDS FOR ALL CHILDREN, INC., as legal guardian and next friend of the named 150 infant individuals, et al.**

v.

**LOCKHEED AIRCRAFT CORPORATION and the United States of America, Appellants.**

No. 82–1424.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1982.

Decided Sept. 9, 1983.

Richard M. Sharp, Washington, D.C., with whom Bruce C. Swartz, Carroll E. Dubuc, Nicholas H. Cobbs, William Kanter and Linda Jan S. Pack, Attys., Dept. of Justice, Washington, D.C., were on the brief for appellants.

J. Vernon Patrick, Jr., Birmingham, Ala., with whom Oren R. Lewis, Jr., Arlington, Va., William M. Cohen and Charles R. Work, Washington, D.C., were on the brief for appellees.

Before BORK and SCALIA, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

This interlocutory appeal occurs in the course of protracted litigation resulting from the crash outside Saigon on April 4, 1975, of a C5A aircraft manufactured by Lockheed Aircraft Corporation and owned and operated by the United States Air Force. The district court denied appellants' motion to dismiss on *forum non conveniens* grounds seventy-three actions filed by Friends for All Children, Inc. ("FFAC") on behalf of foreign plaintiffs for injuries allegedly sustained in this crash but certified this question for review under 28 U.S.C. § 1292(b). We granted leave to appeal and affirm.

### I.

Shortly before United States forces were evacuated from South Vietnam, President Ford authorized "Operation Babylift" and ordered a Lockheed C5A transport to Saigon to evacuate Vietnamese orphans. Soon after taking off from Saigon with more than three hundred persons on board, including two hundred and fifty infants, the plane lost a cargo door, suffered explosive decompression, and crash-landed in a rice paddy near Saigon. One hundred and forty-four persons on the plane perished; approximately one hundred and fifty children and babies survived. Most of the surviving orphans were flown to the United States the next day and, after undergoing medical examinations, were released to their adoptive parents or to representatives of adoption agencies.[1]

---

1. Additional factual background to this litigation is set out in *Schneider v. Lockheed Air-*

Approximately one year after the crash, FFAC, as "legal guardian and next friend" of one hundred and fifty named plaintiffs, filed a complaint against Lockheed in the United States District Court for the District of Columbia. The complaint alleged that the plaintiffs were survivors of the C5A crash and charged Lockheed with negligence in the design and manufacture of the aircraft. The complaint did not name the United States as a defendant, but the United States has been joined as a result of Lockheed's third-party complaint, which alleged that primary negligence on the part of the United States had proximately caused the accident.

Subsequently, twelve jury trials were held concerning these claims; and stipulations have been entered into by the parties that effectively narrow the remaining contested issues to be litigated. The first stipulation, J.A. at 179–81, approved by the district court on December 6, 1979, provided, *inter alia,* that (1) Lockheed would not contest its liability for compensatory damages, (2) the United States would not contest its liability for indemnification or contribution for any such compensatory damages, (3) each adoptive parent, court appointed guardian or other legal representative who responds to the guardian *ad litem's* notice and indicates a desire to proceed shall file an amended complaint on behalf of each infant and will (4) waive all claims for non-compensatory and punitive damages.[2] This stipulation contains various provisions that can be read as reflecting an understanding that further proceedings would take place in the United States District Court for the District of Columbia, but the stipulations are sufficiently complex and ambiguous on this point that they are

not dispositive and we need not rely on them.[3] A second stipulation, approved by the district court on the same day, established that Lockheed would make certain non-refundable payments to the guardian *ad litem* to facilitate the litigation and that "[i]n view of defendant's agreement to make payments for travel expenses for such depositions and medical examinations ..., the parties agree that to the extent possible, these depositions and examinations will take place in the District of Columbia area." J.A. at 177.

On June 13, 1980, some six months after the district court's approval of these stipulations, Lockheed moved to dismiss the complaints filed on behalf of foreign plaintiffs on the ground of *forum non conveniens.* This motion was denied by the district court on June 19, 1980 on the grounds that "these cases have unique and significant contacts with the United States and the Seat of Government, *i.e.,* the District of Columbia." J.A. at 199. Lockheed's subsequent motion for certification of this decision under 28 U.S.C. § 1292(b) (1976) was denied. Lockheed's *forum non conveniens* motion was renewed on January 12, 1981, after the district court *sua sponte* invited the parties on November 20, 1980, to reconsider the applicability of the doctrine in light of this court's decision the preceding week in *Pain v. United Technologies Corp.,* 637 F.2d 775 (D.C.Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). On May 15, 1981, the United States filed a memorandum in support of Lockheed's renewed motion to dismiss.

## II.

The district court denied the renewed *forum non conveniens* motions of Lockheed

---

craft Corp., 658 F.2d 835 (D.C.Cir.1981), *cert. denied,* 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982).

**2.** *Friends For All Children, Inc. v. Lockheed Aircraft Corp.,* No. 76 Civ. 0544 (D.D.C. Sept. 14, 1979).

**3.** While none of the provisions in the stipulations can reasonably be read as a formal waiver by defendants of a *forum non conveniens* defense, the various concessions and obligations arising from the stipulations are clearly

relevant to the task of "balanc[ing] the interests of the plaintiffs, the defendant[s], *and* the forum as part of an overall 'weigh[ing of the] relative advantages and obstacles to fair trial' in the *particular* forum where suit is first initiated." *Pain v. United Technologies Corp.,* 637 F.2d 775, 783 (D.C.Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981) (emphasis in original), *citing Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

and the United States on October 2, 1981.[4] J.A. at 264. The court acknowledged at the outset that "trial of these cases ... would impose an enormous burden on the judges of this busy Court," *id.* at 259, but, after weighing various factors, concluded that "it would be manifestly unjust to require each plaintiff to mobilize abroad the evidence and representation now available here," *id.* at 263, and denied the motion "without prejudice to their renewal before the judge to whom each individual case will be assigned." *Id.* at 264.

■ Before detailing the factors that weighed against dismissal, the court pointed out that the forum had been chosen by the plaintiff and, citing *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), observed that "[t]he defendants have a heavy burden in overcoming the presumption favoring the forum selected by the plaintiff." J.A. at 260. As the Supreme Court's subsequent decision in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), *reh. denied,* 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982), establishes, the district court was mistaken in supposing that a foreign plaintiff's choice of a United States forum is entitled to so much deference.[5] There is, however, no indication in the memorandum opinion of the district court that this presumption was necessary or was actually relied upon in reaching its decision.

In explaining its denial of the motion to dismiss, the district court noted first that it and our court "already have an extraordinarily large investment of time and effort in the management and resolution of the closely-related cases brought by United States resident infants," J.A. at 260, and that counsel, most of whom are from the

Washington area, had already developed "extensive experience and expertise with respect to the intricate facts and law which are at issue, with slight variations, in all of the cases." *Id.* It similarly pointed out that numerous expert witnesses, who had come to "constitute an experienced, seasoned cadre," *id.* at 261, were now "in place here" and that it would seem to be "more convenient to bring an individual foreign infant plaintiff to the United States than it would be to organize similar cadres of experts in each of the several countries in which the foreign plaintiffs reside or to send the U.S. cadre there." *Id.* The court also observed that it was in the best position both to oversee the administrative machinery that had been established to facilitate settlement and to interpret complex agreements that had been negotiated among the guardian, plaintiffs' counsel, Lockheed, and the United States. *Id.* at 260–61.

The district court next detailed factors that distinguish the present case from our decision in *Pain.* All the parties in *Pain,* the district court noted, unlike most of the ones here, had strong contacts with the foreign forum (Norway); Norwegian authorities had conducted the official investigation of the crash in question in *Pain* and all the documentary and factual evidence was located in Norway. By contrast, the district court noted,

> the plaintiffs were maintained in Vietnam by Friends for All Children, a private American charity which was caring for orphans there. Friends for All Children arranged for the adoption of all the infant orphan plaintiffs, here and abroad. At the time of the crash, they were being transported to the United States from Vietnam pursuant to an order by then President Ford in an operation conducted

4. *Friends For All Children, Inc. v. Lockheed Aircraft Corp.,* No. 76 Civ. 0544 (D.D.C. Oct. 2, 1981).

5. The Supreme Court explained, "In *Koster,* the Court indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum.... When the home forum has been chosen, it is

reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." 454 U.S. at 255–56, 102 S.Ct. at 265–66 (citations and footnotes omitted).

by the United States Air Force. This country has a public interest in fair adjudication of the claims of all the orphans which was not present in *Pain.*

J.A. at 262.

Responding to Lockheed's argument that its agreement not to contest liability for the crash rendered foreign fora more convenient because the extent of each infant's injuries had to be determined by medical experts who spoke the patient's language and who knew the mores of that place, the district court noted that each plaintiff was still required to prove that the accident was the proximate cause of the diagnosed injuries and that the evidence needed to litigate these issues was more readily available in the United States. The court further pointed out that neither the defendant nor the third-party defendant had made any showing that it would be prejudiced by trial of the suits in a single court in the United States; and, in this context, it observed that "the United States as a sovereign is, or should be, reluctant on principle to submit to the authority of a foreign nation's courts, even indirectly as a third-party defendant." J.A. at 263. Finally, the court noted that the defendant's offer to consent to jurisdiction in the District of Columbia if there is no adequate remedy abroad and the fact that a United States court might in some of the cases have to apply foreign law did not suffice to outweigh the factors showing that balance of conveniences favored retaining jurisdiction. *Id.*

### III.

The *forum non conveniens* motion is governed by the principles most recently articulated by the Supreme Court in *Reyno* and by this court in *Pain.*[6] *Pain* built upon *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), which had identified "two lists of factors that remain to this day the primary sources of guidance for trial courts applying the *forum non conveniens* doctrine: those factors relevant to the convenience of the litigants and those rele-

vant to the convenience of the forum." *Pain,* 637 F.2d at 782. *Pain* set out a framework for the application of these factors:

> [A] district judge's *forum non conveniens* inquiry should proceed in four steps. As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. Next, the trial judge must consider all relevant factors of *private* interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice. If the trial judge finds this balance of private interests to be in equipoise or near equipoise, he must then determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum. If he decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

637 F.2d at 784–85 (emphasis in original).

Appellants challenge the ruling below on the grounds that the district court failed to apply the *Pain* analysis "systematically," that it applied an improper presumption favoring plaintiffs' choice of forum, that it erroneously concluded that there is a national interest in these lawsuits requiring adjudication in the District of Columbia, and that it erred by substituting its judgment for that of the Department of Justice in determining whether the interests of the United States as sovereign would be disserved by trying these suits in foreign courts. They further urge that these errors justify this court in conducting its own de novo analysis of the balance of conveniences in lieu of requiring the district court to rule on the *forum non conveniens* issue for a third time. As was indicated above, we agree that the district court erred in assuming that a strong presumption favors plaintiffs' choice of forum. Because this may have affected the court's reasoning, we en-

---

**6.** The Supreme Court cited *Pain* with apparent approval in *Reyno,* 454 U.S. at 250, 256–57 nn. 23–24, 259 n. 28, 102 S.Ct. at 262, 266 nn. 23–24, 268 n. 28.

gage in our own analysis, in the course of which we address the other contentions made by appellants.

### A.

■ *Reyno* confirms that "[a]t the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. The *Reyno* Court further explains that the basic test is simply whether the defendant is amenable to process in the foreign jurisdiction but that in rare circumstances inadequacy of remedy may also justify dismissal of a *forum non conveniens* on this ground. *Id.*

The parties vigorously contest the outcome of this threshold test, and they have submitted numerous affidavits presenting conflicting views of the availability of fora in the plaintiffs' home jurisdictions. Appellees assert that the courts in most of the foreign countries involved will not accept jurisdiction and that the delays that will ensue if these cases are adjudicated abroad are such that, in the present circumstances,[7] the remedy in these foreign fora, even if available, must be considered inadequate. Appellants contend that the relevant foreign law confers jurisdiction for these suits, point out that they have agreed through stipulation to subject themselves to jurisdiction in the District of Columbia for any suit for which jurisdiction is not available abroad, and argue that any delays that may result from the granting of their *forum non conveniens* motion will not be substantial.

As the affidavits make clear, the determinations of foreign law that would have to be made to evaluate the availability of adequate alternative fora are extremely difficult and would require a great deal of expertise not readily available to us. Perhaps because of the difficulty, this factor was not directly addressed by the district court, which relied instead on other factors. Appellants place great weight on this omission by the trial court as well as on its failure to refer explicitly to the four-step *Pain* procedure and to balance the factors "systematically." While *forum non conveniens* motions are to be evaluated through the exercise of structured discretion, appellants go too far in arguing that the trial court must address and explicitly weigh, one against the other, each of *Pain's* four factors. Nothing so mechanical is required. Availability of adequate alternative fora is a threshold test only in the sense that a *forum non conveniens* motion cannot be granted unless the test is fulfilled.

In the present case, we, like the trial court, find it unnecessary to resolve the complicated question of whether adequate alternative fora are available because, even on the assumption that such fora exist, the other factors make it clear that the *forum non conveniens* motion should be denied.

### B.

■ The second step of the *Pain* procedure is the evaluation of the "private interest" factors set forth in *Gilbert:*

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions to the enforcibility [sic] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

*Pain,* 637 F.2d at 782, *quoting Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843. Appellants emphasize that, as a result of the stipulations, in the remaining litigation "damages issues predominate over liability issues" and, accordingly, the relative ease of access to sources of proof favors foreign fora because each infant's injuries must be evaluated by local doctors who can measure each infant's handicaps against the culture in

---

**7.** FFAC emphasizes that remedial therapy, to be fully efficacious, must be provided as soon as possible and that delay directly reduces the degree of rehabilitation that can be achieved. *See, e.g.,* Testimony of Dr. Carmen Keith Connors (J.A. at 313–15).

which the infant is being raised. Insofar as the stipulations affect this determination, we have already noted that they can be read as having been framed in contemplation that the remaining issues would be litigated in the District of Columbia. Appellees have pressed this argument, but we do not find it necessary to evaluate the *quid pro quo* of the stipulations. Furthermore, we acknowledge that, standing alone, the need for evidence of the type appellants describe might strongly favor granting a *forum non conveniens* motion. That need does not stand alone, however. Countervailing considerations indicate that the balance of "private interest" factors must be struck in favor of retaining jurisdiction in the United States. In particular, as the district court noted, damages are by no means the sole or even the major issue remaining to be litigated, for Lockheed is continuing to contest whether each infant's injuries, whatever their extent, were caused by the plane crash or instead are to be attributed to other causes. Thus, as the district court correctly observed, "each plaintiff is now obligated to prove in detail that the 1975 accident proximately caused that plaintiff's injury. That means that the details of the accident must remain at issue in each case." J.A. at 262.

Our review of the record leads us to conclude that "the relative ease of access to sources of proof" on these remaining issues strongly favors denying the *forum non conveniens* motion. In the twelve trials that were previously litigated, Lockheed has, for example, consistently attempted to prove that the infants suffered from malnutrition and other ailments in Vietnam and that their present health problems are attributable to these causes and not to the crash. This issue will also be litigated in the remaining cases, and the prior trials indicate that the overwhelming majority of necessary witnesses are located in the United States. Thus, since the children's medical records were apparently destroyed in the crash, the FFAC nurses who examined the children in Vietnam and who now mostly reside in the United States are expected to be called as witnesses on this issue. Simi-larly, Lockheed's efforts to show that the severity of the crash was not sufficient to cause the injuries attributed to it by the plaintiffs require the testimony of the C5A flight crew as well as that of numerous engineers and experts, nearly all of whom, we understand from the record and the briefs, are located in the United States. In addition, these contested issues have already generated tens of thousands of pages of documents, many of which will be relevant in future litigation and virtually all of which are in English. The trial transcripts alone number some 23,000 pages; and plaintiffs' trial exhibits, which appellees indicate that they intend to use in all trials, Appellees' Brief at 13, consist of 6,000 pages. There is obviously an immense burden in translating these documents into the various foreign languages of the numerous jurisdictions where cases may be tried if the *forum non conveniens* motion is granted. In this respect, too, the present case is unlike *Pain,* where the granting of the motion would probably have resulted in the litigation being conducted in a single foreign country and in all events in no more than four. While *Pain* teaches that such considerations are not decisive, it also recognized that they "are not easily ignored." 637 F.2d at 791. We note in addition that because the September 14, 1979 stipulations already require each party upon request to produce at trial any witness under that party's control, it is unlikely that additional witnesses or material evidence unavailable here could be obtained by compulsory process abroad.

It must be remembered that we are denying only a motion for dismissal of all cases brought by foreign plaintiffs. The district court said, and we agree, that the judges to whom individual cases are assigned will remain free, consistently with the principles stated here and in the relevant precedent, to dismiss particular cases on grounds of *forum non conveniens.* More particularized showings in individual cases might make a case for dismissal more persuasive than has been made for dismissal in gross. Wherever these cases are tried there will be inconvenience, but the trial judges have ample

power to require plaintiffs who wish to try their cases here to minimize the inconvenience, so far as it is within plaintiffs' power, to defendant.

In light of the fact that scientific evidence concerning the crash has been assembled in the United States, that a large percentage of the witnesses who can be expected to be called reside in the United States, that the documentary evidence already assembled is in English, that the district court and this court have already done a great amount of work on the closely-related cases brought by children living in the United States, and that a large number of lawyers already intimately familiar with the facts and legal issues common to these cases are in this area, our review of the record leads us to the same conclusion that the district court reached: "[i]f it is convenient to try the accident over and over again, this Court is now the most convenient place for all concerned to try it." J.A. at 262–63. The "private interest" of the litigants relating to access to sources of proof heavily favors retention of jurisdiction in the District of Columbia.

### C.

In *Pain,* we stated:

Three principles may be derived from the list of public interest factors enunciated in *Gilbert:* first, that courts may validly protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it; second, that courts may legitimately encourage trial of controversies in the localities in which they arise; and third, that a court may validly consider its familiarity with governing law when deciding whether or not to retain jurisdiction over a case.

637 F.2d at 791–92 (footnotes omitted). *Pain* also indicates that these public interest factors need not be evaluated when the private interest factors are not "in equipoise or near equipoise," *id.* at 784; nonetheless, we do so here because analysis of the public interest factors shows them to be so nearly in equipoise that they do not affect our conclusion that the private interest factors require dismissal of the *forum non conveniens* motion.

Appellants attack the district court's evaluation of public interest factors and, in particular, its conclusion that the United States as a sovereign "is, or should be, reluctant on principle to submit to the authority of a foreign nation's courts." J.A. at 263. Appellants characterize this conclusion as "an unwarranted judicial intrusion into the responsibilities of the Executive Department," Appellants' Brief at 35, and note that this is a question that a district court should not decide *sua sponte.* There is merit to appellants' point. Indeed, if these cases were dismissed, the United States would not be subject to foreign court jurisdiction since it has settled with Lockheed and has not been made a defendant by the plaintiffs. There are, however, numerous other aspects of this case that suggest that there is indeed a local American interest in the resolution of this litigation.

"Operation Babylift," it need hardly be belabored, was in almost all respects entirely an American operation. It was organized by Americans, and it employed American military equipment and personnel. The decision to use the C5A for "Operation Babylift" was made by government officials in Washington, and the C5A was itself designed and manufactured in the United States. Defendant Lockheed is an American corporation and "is engaged in some business activity in the District of Columbia," J.A. at 115, a fact which at least reduces any concern, present in *Pain* and *Reyno,* that plaintiffs may simply be vexatiously involved in "forum-shopping." While the 73 infants now reside abroad, their adoptions by and transfers to foreign families were arranged by Americans, and the injuries they complain of were allegedly sustained while they were being transported to the United States. They were given medical examinations in the United States. There is, it is clear, more than enough connection with the United States to satisfy the concern the Supreme Court expressed in *Gilbert:*

Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of

many persons, there is reason for holding the trial in their view and reach rather than in remote parts ... where they can learn of it by report only. There is a local interest in having localized controversies decided at home.

330 U.S. at 508–09, 67 S.Ct. at 843. Given the involvement of the United States in every phase of the operation at issue in these cases, it seems to us impossible to say that there is not a strong national interest in the litigation and in seeing that justice is done.

It is true that the courts here are busy, but the district judges are industrious and generally current with their work. It is also true that foreign jurisdictions have a major interest in the resolution of these suits. It is in the foreign jurisdictions that the children will be raised, and it is there that they will receive rehabilitative therapy and education. Insofar as these infants will require and be entitled to public services, it is the foreign jurisdictions that will provide them. Furthermore, it is not entirely irrelevant that the United States has joined Lockheed in its *forum non conveniens* motion. While it is the province of the courts and not of the parties to determine the public interest factors relating to the suitability of a forum chosen by the plaintiffs, a court should not altogether ignore a decision by the executive branch that litigation of a suit in foreign courts is in the public interest. On the other hand, the United States has not submitted a separate brief in this appeal, it has not identified any factors specifically bearing upon the interests of the government, and we therefore do not know what particular considerations led it to support the *forum non conveniens* motion. Indeed, since the United States has settled with Lockheed by agreeing to a formula for indemnification, it would appear that the government's most concrete interest is merely in the size of potential judgments. Thus, though there are persuasive considerations relating to the public interest factors that support denial of the *forum non conveniens* motion, we cannot say that the connection of the litigation to foreign jurisdictions, along with the expressed, though unexplained, preference of the United States for resolution of the suits abroad, do not represent equally persuasive countervailing considerations. *See generally,* Note, Forum Non Conveniens *and Foreign Plaintiffs in the Federal Courts,* 69 Geo.L.J. 1257, 1269–77 (1981) (discussion of public interest factors). We believe the public interest factors are in or near equipoise. They clearly provide no basis for disturbing the marked imbalance of the private interest factors in favor of denying the *forum non conveniens* motion. Since we find that the private interest factors counsel that the motion be denied and that the public interest factors are in rough balance, we need not engage in the final stage of the *Pain* analysis.

IV.

Because the district court opinion can be read as having been improperly influenced by a presumption in favor of plaintiff's choice of forum, we have conducted a de novo review of the record to evaluate the *Pain* factors. Our review indicates that the balance of conveniences respecting private interest factors strongly favors denying appellants' *forum non conveniens* motion. Accordingly, the judgment of the district court is

*Affirmed.*