691 So.2d 1111 (1997)
CIBA-GEIGY LIMITED, BASF A.G., International Fertilizer Limited, Del Monte Fresh Produce N.A., Inc., and Del Monte Fresh Produce Co., N.A., Appellants,
v.
The FISH PEDDLER, INC., Pink Star Corporation, Lango-Taura S.A., et al., Appellees.
No. 96-1536.
District Court of Appeal of Florida, Fourth District.
March 26, 1997.
Rehearing and Rehearing Denied May 8, 1997.
*1113 Robert D. McIntosh and Dan S. Arnold, III of Fleming, O'Bryan & Fleming, P.A., Fort Lauderdale, for appellants.
Kevin A. Malone, Kelley B. Gelb, and Robert J. McKee, of Krupnick, Campbell, Malone, Roselli, Buser, Slama, and Hancock, P.A., Fort Lauderdale, and John R. Beranek of MacFarlane, Ausley, Ferguson & McMullen, Tallahassee, for appellees.
Wendy F. Lumish and Jeffrey A. Cohen of Popham, Haik, Schnobrich & Kaufman, Ltd., Miami, for amicus curiae-Product Liability Advisory Council, Inc.
Rehearing and Rehearing En Banc Denied May 8, 1997.
WARNER, Judge.
In this appeal from an order denying a motion to dismiss for forum non conveniens, we are called upon to apply Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86 (Fla.1996), to a suit filed in Florida by Ecuadorian companies involving alleged torts occurring in Ecuador. We hold that the trial court abused its discretion in denying the motion. That abuse results from the trial court's misinterpretation of Kinney, and the federal body of law on which Kinney is based. The court made legal errors in weighing the factors under Kinney and in according a strong presumption favoring the plaintiff's choice of forum. Therefore, we reverse.
The suit below originated with a one count breach of contract complaint between two Florida corporations. In 1994, The Fish Peddler, Inc. sued Pink Star Corporation in Broward County for breaching its oral contract with Fish Peddler to supply shrimp that conformed to Fish Peddler's requirements of quantity, quality, and size. Pink Star filed an answer and a third-party complaint against a foreign corporation, Lango-Taura S.A., for indemnification and for breach of a contract between Pink Star and Lango-Taura under which Lango-Taura was to supply Pink Star with shrimp. It appears that Lango-Taura stipulated to jurisdiction in Florida even though the allegations of the complaint do not allege necessary jurisdictional grounds.
Lango-Taura filed an answer and a fourth-party complaint for contribution, negligence, and products liability against appellants Del Monte Fresh Produce N.A., Inc., a Florida corporation, Del Monte Fresh Produce Co., a Delaware corporation, Ciba-Geigy Ltd., a Swiss corporation, Ciba-Geigy Corp., a New York corporation, BASF Aktengesellschaft, a German corporation, and International Fertilizer, Ltd., a Bahamian corporation whose principal place of business was alleged to be in Florida. After this complaint was filed, thirty other cases were filed primarily by Ecuadorian shrimp farmers against these same defendants claiming that they were entitled to compensation basically on the same grounds alleged by Lango-Taura. The trial court's order recites the gist of their claims:
[B]anana growers in the vicinity of Guayaquil, Ecuador, used ... fungicides manufactured primarily in Switzerland and Germany[] to protect their plants from disease. [The Ecuadorian shrimp farmers] claim these fungicides leached into rivers by way of run-off from the farms and spread through the Gulf of Guayaquil where the Plaintiffs' shrimp farms are located. *1114 The Plaintiffs argue that the use of these fungicides resulted in the increased mortality of shrimp in that region, causing them to sustain severe economic losses.
The defendants filed motions to dismiss for forum non conveniens in each case involving Ecuadorian shrimp farmers, and for discovery purposes and for consideration of these motions the cases were consolidated. In a lengthy ruling, the trial court reviewed the evidence in light of the Kinney factors and concluded that the analysis of those factors failed to support the defendant's contention that these cases should be dismissed under the doctrine of forum non conveniens.
We must first observe that the trial court was confronted with the application of Kinney only a few short weeks after its release. The court studiously reviewed the voluminous evidence and the lengthy arguments of counsel. Our disagreements with the trial court's analysis stem from our interpretation of Kinney, which in some substantial respects differs from that of the trial court. Nevertheless, we commend the court on its diligence and the thoroughness of its order, which has permitted us to focus our review on significant issues which arose in this case and may be instructive in future forum non conveniens cases.

Kinney v. Continental Insurance
In Kinney, the supreme court expressed concern that the trend in private international law of attempting to file suit in American courts for injuries sustained elsewhere was rising to abusive levels in Florida, caused by the forum non conveniens doctrine espoused in the court's opinion in Houston v. Caldwell, 359 So.2d 858 (Fla.1978), which was less stringent than the federal doctrine. The court noted:
[T]he Houston doctrine is resulting in additional burdens imposed upon Florida's trial courts over and above those caused by disputes with substantial connections to state interests.... In light of the scarce tax-funded resources available for judicial activities, we must be mindful when doctrines adopted as common law now are leading to counterproductive results.
674 So.2d at 88. The court went on:
We must rightly question expenditures of this type where the underlying lawsuit has no genuine connection to the state. Florida's judicial interests are at their zenith, and the expenditure of tax-funded judicial resources most clearly justified, when the issues involve matters with a strong nexus to Florida's interests. But that interest and justification wane to the degree such a nexus is lacking.
Id. at 90.
The supreme court then adopted the federal standard for determining forum non conveniens, consisting of the four-step analysis established in Pain v. United Technologies Corp., 637 F.2d 775 (D.C.Cir.1980):
As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. [2] Next, the trial judge must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice. [3] If the trial judge finds this balance of private interests in equipoise or near equipoise, he must then determine whether or not factors of public interest tip the balance in favor of a trial in [another] forum. [4] If he decides that the balance favors such a... forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.
674 So.2d at 90 (quoting Pain, 637 F.2d at 784-85). Although the Florida Constitution guarantees any person access to our courts to redress injuries, Art. I, § 21, Fla.Const., the court determined that:
[T]he obvious purpose underlying Article I, section 21 is to guarantee access to a potential remedy for wrongs, not to provide a forum to the world at large. Thus, the right of access will not bar dismissal to the degree that such Florida interests are weak and to the degree that remedies are available in convenient alternative fora with better connections to the events complained of.

*1115 The use of Florida courts to police activities even in the remotest parts of the globe is not a purpose for which our judiciary was created. Florida courts exist to judge matters with significant impact upon Florida's interests, especially in light of the fact that the taxpayers of this state pay for the operation of its judiciary. Nothing in our Constitution compels the taxpayers to spend their money even for the rankest forum shopping by out-of-state interests.
Id. at 93.
The trial court exercises its "sound discretion" in determining whether or not to dismiss the case for forum non conveniens. Fla.R.Civ.P. 1.061(a); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); Stewart v. Dow Chem. Co., 865 F.2d 103, 106 (6th Cir.1989). In Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), while the supreme court stated that discretion is abused only where no reasonable person would take the view adopted by the trial court, it noted that "[t]he trial court's discretionary power is subject only to the test of reasonableness, but that test requires a determination of whether there is logic and justification for the result." Id. at 1203. Further, the exercise of judicial discretion must be within the limits of applicable principles of law and equity. Ellard v. Godwin, 77 So.2d 617 (Fla.1955). Thus, discretion may be arbitrarily exercised where principles of law are not followed. With these principles in mind, we turn to a consideration of the Kinney factors derived from Pain.

I. Adequacy of the Alternative Forum

The first factor the court must analyze is whether there is an available adequate alternative forum. The supreme court noted in Kinney that:
the chief concern of the first level of analysis is the ability to perfect service of process. If the "alternative" forum in theory offers a remedy for the wrong in question but lacks any meaningful mechanism for perfecting process, then it is not truly "alternative" within the meaning of [Gulf Oil Corp. v.] Gilbert [, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)]. Moreover, the Supreme Court has emphasized that alternative fora are not "clearly unsatisfactory" merely because the available legal theories or potential recovery there are less generous than those available where suit was brought. Rather, the alternative fora are inadequate under the doctrine only if the remedy available there clearly amounts to no remedy at all.
674 So.2d at 90 (footnote and citation omitted). Other courts have noted that the test is actually a two-step process determining both availability and adequacy:
A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American Court.
In re Air Crash Disaster Near New Orleans, La., 821 F.2d 1147, 1165 (5th Cir.1987) (citations omitted), vacated on other grounds, Pan American World Airways, Inc. v. Lopez, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989).

a. Availability

The appellants contend that Ecuador is an available and adequate alternative forum to resolve this dispute. All of the appellants have agreed to submit to the jurisdiction of Ecuador, making themselves amenable to service of process there. The appellees, on the other hand, contend that Ecuador is an inadequate alternative forum because they cannot obtain jurisdiction over The Fish Peddler, Inc., and Pink Star Corporation in Ecuador. The trial court agreed that Ecuador was not an available forum. The court concluded that jurisdiction could not be obtained over Pink Star or Fish Peddler in Ecuador, even though the court acknowledged that it could sever the claims of those parties from the remaining claims. The court also noted that if the plaintiffs were to discover additional defendants which may be responsible for some of the injuries, there was no guarantee that potential additional defendants would be subject to the jurisdiction of Ecuadorian courts.
*1116 The complaint filed by Fish Peddler against Pink Star was a garden variety breach of contract action alleging that Pink Star had a contract to furnish shrimp of a certain size and quality to Fish Peddler, which contract was breached. Pink Star's answer consisted essentially of a general denial with no affirmative defenses. Pink Star's third-party complaint against Lango-Taura also alleged a straight breach of contract to supply Pink Star with shrimp of a particular quantity and quality. Lango-Taura answered that complaint with a general denial and several affirmative defenses, one of which asserted that any losses sustained by Pink Star as the result of the failure of Lango-Taura to perform its contract were the result of the negligence of third parties over whom Lango-Taura had no control. Lango-Taura then brought a fourth-party complaint against the various manufacturers of the chemicals and others claiming the negligent application of pesticides.
The Fish Peddler also filed a suit against Lango-Taura containing the same allegations as were contained in its complaint against Pink Star. Lango-Taura answered but asserted no affirmative defenses. It then filed a similar third-party complaint against the same entities it sued in the fourth-party complaint described above. Lango-Taura is an Ecuadorian corporation. It should be noted that there were no allegations whatsoever in the complaints against Lango-Taura that would subject Lango-Taura to personal jurisdiction in Florida. Lango-Taura did not contest jurisdiction, but rather stipulated to it, and then brought its own claims against the chemical companies and the other defendants.
The rest of the separately filed actions consisted of suits by the shrimp farmers against the chemical companies and banana growers for damages to their Ecuadorian operations. Thus, of the thirty cases consolidated for discovery only, twenty-eight do not involve either Fish Peddler or Pink Star, and the only claims brought in these suits regard causes of action for damage to the plaintiffs' shrimp farms in Ecuador. With respect to the two involving Fish Peddler and Pink Star, they were only able to maintain Florida as their choice of forum because Lango-Taura stipulated to jurisdiction here.
There is no identity of legal or factual issues between the contract actions brought by Fish Peddler and Pink Star and the twenty-eight tort actions brought by the Ecuadorian shrimp farmers. The third and fourth-party complaints filed by Lango-Taura are also not dependent on the same facts and circumstances necessary to support the contract actions of Fish Peddler or Pink Star.[1] As the trial court properly noted, it could sever the actions brought by Fish Peddler and Pink Star, because they are based solely on a breach of contract action. The trial court merely stated that it would be more convenient if the parties could litigate all of the claims in one country instead of two. This factor does not go to the adequacy of the remedy but to the second step of the analysis. Because the "whole case" involving the claims of the shrimp farmers against those entities which they claim damaged their property in Ecuador can be brought in Ecuador, the trial court abused its discretion in determining that Ecuador was not an alternative forum possessing jurisdiction. Here, logic and justification did not support requiring all of the defendants to litigate in Florida just to allow Lango-Taura, who consented to the jurisdiction of Florida, to defend the easily severable breach of contract claims of Fish Peddler and Pink Star in the same proceeding.
*1117 We conclude that, under the Kinney standard, the trial court erred in finding that Ecuador was not an alternative forum.

b. Adequacy of Remedy

Citing Delgado v. Shell Oil Co., 890 F.Supp. 1324 (S.D.Tex.1995), and Sequihua v. Texaco, Inc., 847 F.Supp. 61 (S.D.Tex. 1994), the trial court acknowledged that the Civil Code of Ecuador allows actions for negligence and strict liability in tort. This view was supported by the affidavits of all of the experts in Ecuadorian law who offered opinions on the substantive law. Therefore, the remedy was adequate under Kinney. See also Piper Aircraft.
The trial court concluded, however, that the Ecuadorian remedy may be no remedy at all because of the substantial delay that the litigants were likely to experience given the complexity of the case. In Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220 (3d Cir.1995), the court held that "intolerable" litigation delays could render a remedy "clearly inadequate" under Piper Aircraft and thus be no remedy at all. The line between a tolerable delay and an intolerable one was not drawn by the court, although it agreed that a delay of a few years was of no legal significance as a factor in determining forum non conveniens. The court found that a delay of upwards of 25 years in the foreign forum in a relatively routine personal injury suit was intolerable and made the promise of a remedy in the foreign forum clearly inadequate.
Here, the trial court found that due to the complexity of the case it would take many more years to complete in Ecuador than in the United States, apparently under the belief that most federal cases that had been dismissed in favor of trial in an Ecuadorian court had never been brought to conclusion. Unfortunately, the article on which this belief was based did not differentiate between cases dismissed in favor of Ecuador from those dismissed in favor of other foreign jurisdictions. Moreover, the study showed that plaintiffs decided not to pursue some cases after dismissal, other cases had settled, and some had gone to trial. The affidavits of the plaintiffs' experts in Ecuadorian law stated that the case would take "many, many" years. There were no affidavits offered as to how long a case of this magnitude will take in the courts of Florida, but cases of similar complexity in federal court can take over a decade to resolve. See, e.g., Delgado, 890 F.Supp. at 1368. A delay of "many, many" years is a legally insufficient standard on which to judge a foreign forum's remedy as inadequate in a highly complex case such as this. The trial court thus erred in finding Ecuadorian courts an inadequate alternative forum for this reason.

II. Balancing of the Private Interests of the Parties

Kinney recognized that the "private interests," also referred to as the "private conveniences" of the parties, are not to be broadly interpreted. In explaining what a court should consider, the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), stated:
An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.
330 U.S. at 508, 67 S.Ct. at 843. Nevertheless, Kinney specifically noted:
"Private interests" do not involve consideration of the availability or unavailability of advantageous legal theories, a history of generous or stingy damage awards, or procedural nuances that may affect outcomes but that do not effectively deprive the plaintiff of any remedy.
674 So.2d at 91.
The trial court's function is to weigh these various considerations and determine where the balance lies between inconvenience to the *1118 plaintiff and inconvenience to the defendants. If the relative conveniences and inconveniences to the parties are "at or near equipoise," then the court proceeds to the third step.
"Equipoise" means simply that the advantages and disadvantages of the alternative forum will not significantly undermine or favor the "private interests" of any particular party, as compared with the forum in which suit was filed. In sum, the competing private interests are substantially in balance in either forum.
Id.

a. Presumption in favor of Foreign Plaintiff

Although the trial court followed the language of Kinney in relying on a strong presumption favoring the plaintiffs' choice of forum, we believe that the application of the presumption in this case was error and that Kinney supports our conclusion. That presumption, which the court recognized in Kinney, is based on federal law. However, the federal courts do not apply that presumption where the plaintiff is foreign. Piper Aircraft, 454 U.S. at 255-56, 102 S.Ct. at 265-66; see also Hu v. Crockett, 426 So.2d 1275, 1279 (Fla. 1st DCA 1983). Piper explained that
[w]hen [a plaintiff's] home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.
454 U.S. at 255-56, 102 S.Ct. at 266 (footnote omitted). Because our supreme court adopted the federal doctrine for forum non conveniens but did not overrule Hu, the Piper Aircraft pronouncement is compatible with Kinney. Of great significance is the fact that Kinney adopted the formulation of the federal test from Pain, and in Pain the court concluded that no special weight should have been given to a foreign plaintiff's choice of forum. Pain, 637 F.2d at 799. Therefore, the trial court erred in according these foreign plaintiffs a strong presumption in favor of their choice of forum.
In Friends for All Children, Inc. v. Lockheed Aircraft Corp., 717 F.2d 602 (D.C.Cir. 1983), the district court also erroneously applied the presumption favoring the forum choice of the plaintiff even though the plaintiff was foreign. As a result, the circuit court conducted a de novo review of the record to evaluate the Pain factors. Id. at 607, 609. While we do not conduct a de novo review, we will accord less deference to the trial court's determinations because of its error of law in applying the presumption in favor of the plaintiffs. Moreover, the trial court's findings are based on affidavits rather than live testimony in which credibility may be an issue. The presumption of correctness given to a trial court's rulings based upon such a record is lessened, because the appellate court has everything the trial court had before it. See West Shore Restaurant Corp. v. Turk, 101 So.2d 123 (Fla.1958).

b. Private Interest Factors

The trial court identified four private interests to be considered: (1) access to evidence and relevant sites; (2) access to witnesses; (3) enforcement of judgments; and (4) the practicalities and expenses associated with litigation. Finally, as an additional private interest factor, we also evaluate the trial court's weighing of the ability to join additional defendants and the availability of third-party practice.

(1) Access to Evidence

The trial court determined that defendants had failed to prove that the transfer of the litigation to Ecuador would improve the parties' relative ease of access to relevant sources of proof and witnesses. This was grounded on the fact that treaties exist between the United States and Ecuador, and the United States and Switzerland and Germany, which permit a Florida court to employ certain procedural mechanisms to obtain relevant documents in these foreign countries. No such treaties exist between Ecuador and Switzerland or Germany pertaining to discovery mechanisms. While noting that "letters rogatory" may be available to the *1119 Ecuadorian courts to obtain documents, there is no obligation to produce documents by the responding country. Therefore, the court determined that this factor favors the Florida forum where the litigants are "guaranteed" to receive the documents necessary to litigate this case.
Preliminarily, we are concerned that the trial court used the wrong test in evaluating the private interest factors. Although at the end of its order, the court states "the defendants have not established that the balance of private interests favors Ecuador, nor is at or near equipoise," the order also states, "the Defendants have failed to present sufficient evidence that the transfer of the litigation to Ecuador will improve the parties' relative ease of access to sources of proof including both documents and witnesses." The alternative does not have to be a better place to litigate. On balance, it must neither disadvantage nor advantage either party.
We conclude that access under Gilbert, as adopted by Kinney, means the availability of physical and documentary evidence in the alternative fora. All physical evidence in this case is found in the farms and streams of Ecuador. Most of the documentary evidence in this case exists in Ecuador or the testing labs of the Swiss and German chemical manufacturing firms. Some documentary evidence which the plaintiffs state that they need is available at testing laboratories in Pensacola, Florida.[2] The affidavits and submissions also show that testing of chemicals was done in Massachusetts. There is some general reference that one of the chemical manufacturers tested some chemicals it manufactures in various states of the United States, including Florida, but it was not established that the particular chemicals used in Ecuador were tested in Florida. Suffice it to say that there are many locations of documentary evidence, but one place where there is none is in Broward County, Florida. Appellees, being mainly Ecuadorian corporations or Ecuadorian subsidiaries of foreign corporations, obviously would have better access to their own documents in Ecuador than in Florida. The appellees' affidavits themselves show that thousands of pages of documents are located on the shrimp farms in Ecuador.
The appellants claim that an Ecuadorian court could obtain documentary evidence from the United States pursuant to 28 U.S.C. § 1782. This section permits foreign countries and litigants to obtain judicial assistance in the United States to obtain evidence located here. See Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 530 n. 13, 107 S.Ct. 2542, 2549 n. 13, 96 L.Ed.2d 461 (1987). Appellees note that the process is cumbersome and full of delays. See John Deere Ltd. v. Sperry Corp., 754 F.2d 132 (3d Cir.1985) (seventeen months to resolve a petition filed under § 1782). Nevertheless, there is a proven procedure to secure documentation of evidence located in the United States. The affidavits do not address how the defendants would obtain evidence in Ecuador for trial in the United States.
While there is very little evidence in Florida, and there would be considerable evidence in Ecuador, whether the case is litigated in Ecuador or in Florida, documents from Germany and Switzerland will be critical to this case. Both sides agree on this point. The trial court determined that access to those documents would be easier in Florida because of treaty provisions between those countries and the United States. There were, however, no affidavits filed by appellees regarding the treaties in question.
Appellants argue that a country or state's discovery procedures are irrelevant to the Kinney analysis. Kinney states that "procedural nuances that may affect outcomes but that do not effectively deprive the plaintiff of any remedy" are not included in the private interests which should be considered by the court. Certainly, the availability of pretrial discovery procedures are a procedural nuance which may vary even from state to state, as well as from country to country. In the absence of any authority to the contrary, we conclude that favorable treaty provisions *1120 regarding production of documents fall into the category of procedural nuances. In this case there is evidence from both German and Swiss experts that those countries would honor requests for documents pursuant to letters rogatory, so there would be access to relevant documents even if that procedure may not be as efficient as if the request came from the United States.[3] Thus, this is not a situation where the plaintiff or defendant would be deprived of all access to documents, and Kinney counsels that "procedural nuances that may affect outcomes but that do not effectively deprive the plaintiff of any remedy" are not the type of private interests which need to be balanced so long as each party is provided a "fair mechanism for trial ... in a broad and basic sense." 674 So.2d at 91; accord Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345 (1st Cir. 1992) (finding that Turkey is an adequate alternative forum even though its discovery procedures are different and less generous than those available in American courts); Panama Processes, S.A. v. Cities Serv. Co., 500 F.Supp. 787, 800 (S.D.N.Y.1980) (absence of any pretrial opportunity to discover opponents' witnesses and documents does not render a civil trial in Brazil inadequate), aff'd, 650 F.2d 408 (2d Cir.1981).
Finally, we must keep in mind that most of the documents in Germany and Switzerland are in the possession of the defendants themselves. There is no challenge to the proposition that an Ecuadorian court can order the production of documents from parties before it. The plaintiffs' experts in Ecuadorian law made this point. While they also say that the procedures to compel compliance from a recalcitrant defendant are not adequate, the trial court's dismissal could condition it on the defendants' compliance with the orders on discovery of the Ecuadorian courts. See Piper Aircraft, 454 U.S. at 257 n. 25, 102 S.Ct. at 267 n. 25 ("In the future, where similar problems are presented, district courts might dismiss subject to the condition that defendant corporations agree to provide the records relevant to the plaintiff's claims."); see also In Re Union Carbide Corp. Gas Plant Disaster at Bhopal, India, 809 F.2d 195, 205 (2d Cir.1987).
Here, it is obvious that Florida has very little evidence within its borders, certainly far less than Ecuador and several other fora which the plaintiffs could have chosen. Our review of the evidence convinces us that, with respect to the access to physical evidence, Ecuador is probably the preferred forum, but that, at the very least, this factor is in equipoise.

(2) Access to Witnesses

The trial court made a similar finding with respect to accessibility of witnesses. It concluded from the affidavits submitted by the parties that there are a great number of important witnesses who are located in the United States, Switzerland, and Germany, as well as Ecuador, although in numbers very few are located in Florida. No one country could claim an overwhelming number of witnesses. While the appellants expected to call many Ecuadorian witnesses, appellees sought to concentrate on the chemical experts located in the United States, Germany, and Switzerland. Again, relying on the existence of treaties between the United States and the other countries which would ease access to witnesses, the court found that on balance this factor also favored the Florida forum.
The appellants attack the trial court's finding by pointing out that they will be put to severe inconvenience in obtaining the live testimony of all of the owners and operators of the shrimp farms in Ecuador and the scientists there who made the claim that the banana fungicides contaminated the shrimp farms. Thus, considering numbers only, and assuming that the appellants would call most of these witnesses at trial, there would be considerable cost and expense to transport *1121 those witnesses to the United States, providing that their attendance could be compelled.
The appellees also presented a list of witnesses from various countries and states whom they intend to call. The location of these witnesses, however, indicates that the appellees would be put to great expense to obtain their presence in Broward County, Florida, for trial. In fact, no witnesses live in Broward County, and only a few live in Florida. Therefore, both sides would be put to great expense to obtain the presence of necessary witnesses in Florida. Both parties would also have significant expenses in getting witnesses to Ecuador, although the appellants would not have as great expense because most of their witnesses live there.
In weighing this factor, however, the trial court again used the wrong test and relied on procedural difference to find that this factor balanced against Ecuador as a forum. The order states, "[t]he Defendants have failed to show it is more convenient to litigate these cases in a court where a treaty allowing for the efficient questioning of witnesses abroad does not exist." (emphasis supplied). Again, defendants need show only that the relative advantages and disadvantages are at or near equipoise. They do not have to prove that Ecuador is a better forum.
Our previous comments about the consideration of treaties for discovery also apply to the attendance of witnesses. And, just as with the documentary evidence, the trial court may require the defendants to produce their employee witnesses for trial in Ecuador as a condition for dismissal of the claim. For these reasons, the relative conveniences of the parties is probably more favorable in Ecuador, where far more witnesses actually reside than in any other forum, but at the very least this factor, too, is in equipoise.

(3) Enforcement of Judgments

The next factor considered by the trial court under the Kinney analysis is whether there is adequate enforcement of judgments in both fora. The trial court determined that the defendants had failed to prove that a judgment rendered in Ecuador is enforceable abroad, noting that there was no evidence that defendants had assets in Ecuador. While an Ecuadorian judgment can be enforced in Florida, the court found that there was no evidence that the same judgment could be enforced in Germany or Switzerland, since no treaties exist between these countries regarding the enforcement of judgments.
The only proof offered to support this conclusion of the trial court was a statement contained in an affidavit from Dr. Emilio Romero Parducci, an expert in Ecuadorian law. That affidavit states:
It is theoretically possible for the courts in Ecuador to seek redress from the Courts in other countries whereby the Ecuadorean judgment would be converted into a judgment of that foreign country. However, there is relatively little precedent for this procedure and, as such, there is no way in which it can be assured that an Ecuadorean judgment would be honored by other countries. As a matter of fact, the Affiant is aware there are countries that only honor judgments of other countries if there is a special treaty between them.
Dr. Parducci did not testify that there were no treaties existing between Ecuador and Germany or Switzerland. The only expert affidavits on German and Swiss law were submitted by the appellants. Their expert stated in his affidavits, "[a]ny judgment rendered in this litigation by an Ecuadorian court would be enforceable in Germany [and Switzerland] to the same extent such as (sic) a judgment would be enforceable if rendered by a Florida state court."
The affidavit of the Ecuadorian legal expert is competent, admissible evidence on the subject of Ecuadorian law, but it cannot be accepted as evidence of the state of German or Swiss law, and it does not give an opinion as to the enforceability of an Ecuadorian judgment in German or Swiss courts. Therefore, the court abused its discretion in finding, without any evidence, that on this factor the relative conveniences of the parties weighed in favor of the United States. On this record, it can only be said that the factor is even as between the two fora.

*1122 (4) The Practicalities and Expenses Associated with Litigation

The trial court weighed this factor in favor of the Florida forum because of the extensive litigation which had already transpired in Florida since the suit was filed in 1994. The court found that it would be very inconvenient for the plaintiffs to be required to begin these suits anew in Ecuador, where the courts in Ecuador would not recognize any of the discovery which has already taken place in these cases. The appellees' attorney presented an affidavit stating that they had already spent nearly a quarter million dollars retaining and deposing experts.
Kinney specifically addressed the issue of ongoing litigation in the Florida forum particularly where litigation had been ongoing in reliance on the former rule of law which the supreme court had adopted in Houston v. Caldwell, 359 So.2d 858 (Fla.1978). It stated:
Where new or renewed motions for forum non conveniens dismissal are prompted in such cases by this opinion, we direct that the lower courts shall not order dismissal if doing so would actually undermine the interests that forum non conveniens seeks to preserve. These include avoiding a waste of resources (including resources already expended), avoiding forcing a plaintiff into a forum where a statute of limitations may have expired, or other similar problems. For example, we believe it would be contrary to the doctrine to order dismissal where the partiesrelying on Houston have substantially completed discovery or are now ready for a Florida trial....
674 So.2d at 93-94. The appellees' affidavits show that discovery in this case is hardly complete, nor is the case anywhere near ready for trial. In fact, it appears that the most significant issue which has occupied the parties and the court is the forum non conveniens motions, which issue was raised in the answers of the defendants as well as by motion filed prior to the issuance of Kinney. The original forum non conveniens motion had just been denied when Kinney was decided. Based on Kinney, rehearing was granted, the trial court denied the motion after a lengthy hearing, and this appeal proceeded. We have stayed further proceedings in the trial court pending our decision of this case so as to prevent litigation costs from mounting. This is not the type of case to which Kinney's concern for wasting substantial resources would apply as the litigation is still in its early stages.
The trial court found that it would be unfair to the appellees to start the litigation over in Ecuador because of the substantial sums spent retaining and deposing expert witnesses which would not be useable in Ecuador for trial. Two reasons undercut the importance of this finding. First, to the extent that the experts retained were the legal experts retained by the appellees in order to defeat the motion to dismiss, these costs should not be considered. Second, if money were spent retaining and deposing experts on the substantive issues in the case, it was not necessarily wasted. Even if the depositions cannot be read at a trial in Ecuador, they still serve the useful purpose of informing each side what the other side's experts will say. Thus, if they have already deposed witnesses, those witnesses will not have to be redeposed in Ecuador in order to discover the substance of their testimony.
However, based on the record it appears that the expenses have been incurred to battle the forum non conveniens motion. First, shortly after the case was filed, it was removed to federal court by the defendants. The same forum non conveniens argument was made in federal court. While the federal judge indicated that he thought the matter should be resolved in Ecuador, he did not actually reach that issue because he found that the federal court did not have jurisdiction. The case was remanded back to state court in December of 1995, and defendants filed a motion to dismiss for forum non conveniens. Two hearings were held on the issue, one prior to the issuance of Kinney and one after the issuance. At a hearing on a motion to stay discovery, plaintiff's counsel admitted that he had agreed not to do discovery on any matter other than the forum non conveniens issue and a jurisdictional issue involving one of the defendants. Therefore, in the year and a half of litigation, it does not *1123 appear that discovery of experts on the merits has occurred.
Friends for All Children, Inc. v. Lockheed Aircraft Corp., 717 F.2d 602 (D.C.Cir.1983), cited by the trial court for the proposition that it would be unjust to require the plaintiff to mobilize the evidence already gathered here in a foreign forum, is distinguishable. In Friends, the plaintiffs had brought suit in 1976 for damages suffered by one hundred fifty Vietnamese orphans who had been injured in a plane crash during "operation Babylift" shortly before United States Forces evacuated Vietnam. Twelve trials had been held on the claims of various children. Stipulations were then entered into by the parties as to the remaining claims, including a stipulation that Lockheed and the United States would not contest their respective liabilities. However, still to be litigated was the causation issue of whether the injuries the individual children complained of were caused by the accident, or, as Lockheed contended, were caused by the children's prior malnourished condition in Vietnam. The witnesses in the first twelve trials on these issues were predominantly located in the United States. It was not until 1980, after these stipulations were entered, that Lockheed moved to dismiss the remaining claims on forum non conveniens grounds. Thus, the district court's statement in Friends, quoted by the trial court here, was made after concluding four years of litigation and twelve trials on the substantive issues in the case. As we have shown, the present case is hardly comparable.
Consequently, we find that the trial court abused its discretion in considering the expenses already incurred in Florida where the forum non conveniens motion had been made and pursued by the appellants in a timely manner.

(5) Availability of Joinder and Third Party Practice

The trial court also considered the ability of both parties to join additional parties if discovery reveals potential liability of other entities. While it evaluated this in considering the availability of a remedy, we think it is appropriately addressed as a factor in balancing private interests. See Piper Aircraft, 454 U.S. at 257-58, 102 S.Ct. at 266-67. As to that feature, the appellees contend that they may find other chemical manufacturers which are responsible for the damage to the shrimp farm who may not be amenable to process in Ecuador. No such parties have been identified in the year of litigation before this appeal was filed. The appellants note that under Ecuadorian law tortfeasors are jointly and severally liable for all damages arising from the tort. Article 2244 of the Civil Code of Ecuador. Therefore, the appellants currently amenable to service would be liable for all the damages even if additional parties may also be responsible. It would therefore be more of a concern of the appellants who may have to seek these additional parties out by way of contribution. In fact, the appellees argued below that the defendants would be inconvenienced by the lack of third-party practice.
The trial court found that the unavailability of third-party practice in Ecuador weighed in favor of denial of the forum non conveniens dismissal, citing Piper Aircraft. The concern in Piper Aircraft was the inability to implead third-party defendants because jurisdiction could not be obtained over them in the United States. Here, the concern from the appellants' side is whether or not they could obtain jurisdiction in the United States over Ecuadorian parties who may have been responsible for the application of the pesticides. Thus, this factor is in equipoise. Although the appellants may not be able to file a third-party complaint, it is unlikely that jurisdiction could be obtained over the necessary parties in the United States. The logic and justification for the weighing of this factor as favoring a Florida forum is not supported by the record, and the trial court abused its discretion in making this finding.
Our review of the record, along with the trial court's reasoning, convinces us that the private interests are at most in equipoise between Florida and Ecuador. We therefore turn to a consideration of the public interests.

*1124 III. Public Interest Factors

The trial court did not weigh the public interest factors, because, under Kinney, having found that the private interest factors favored the Florida forum, its inquiry was at an end. We address this issue because from our review of the record, as well as the arguments made by the appellants and appellees in their briefs, the public interests militate so strongly in favor of dismissal for forum non conveniens that remand for further proceedings is unnecessary.
Pain identified three principles to be considered in evaluating public interest factors. First, courts can protect their dockets from cases over which they may be able to assert jurisdiction but which lack significant connection to the forum. Second, courts can legitimately encourage the litigation of controversies in the localities in which they arose. And third, a court may validly consider its familiarity with the law which will have to be applied in considering whether to retain jurisdiction over a case. Kinney, 674 So.2d at 92.
As to the first factor, this case is a decidedly complex, time-consuming case. In its Kinney opinion, the supreme court made quite clear that it did not intend for Florida taxpayers to have to foot the bill for judicial expenses so that the world can litigate in Florida. If this suit remains in Florida, it will involve the use of substantial judicial resources so that Ecuadorian shrimp farmers can sue Ecuadorian banana farmers and German and Swiss chemical manufacturers.
Appellees respond by pointing out that the trial court should have the discretion to determine whether its docket needs protecting. They accurately point out that the presiding judge, Judge Arthur Franza, is a senior (retired) judge who was appointed to hear this case. But this actually proves the appellants' point that this case poses an additional burden to Florida taxpayers. If a judge in regular service heard this case, it would undoubtedly mean that other cases could not be heard. This involves a question of the appropriate use of time on cases with no real Florida connection. But if a senior judge is appointed to hear the case, the judge is paid per diem for service on cases to which the judge is appointed. Thus, the taxpayers are paying additional monies to have Judge Franza sit on this case over and beyond what is paid to the judges in regular service to the court, not to mention the costs for a courtroom, bailiff, clerk and the other requirements of a civil trial. There is a direct cost to the citizens of the state of Florida to have this case litigated in Florida. And because it is necessary for us to rely on senior judges to help alleviate our crowded dockets, they should be used on cases with connections to Florida.
We should also consider the effect of this case on any jury of Florida residents who may be called to hear this case. The affidavits filed by the appellees' attorney compare this case to the cases against DuPont for damages from the chemical Benlate. That case included hundreds of witnesses and millions of documents. A trial of that magnitude would take many months to complete. We should not burden the local citizenry who will be called as jurors on a case to decide issues with no connection to Florida. See Sibaja v. Dow Chem. Co., 757 F.2d 1215, 1217 n. 5 (11th Cir.1985). Moreover, the jury expense will be another cost directly borne by the taxpayers of the state.
The second principle of public interest is that courts have a legitimate expectation that cases should be tried in the localities in which they arise. Certainly, that is the principle of our venue statutes. To this, appellees posit that the Florida courts have an interest in protecting United States citizens, such as the parent corporations of a few of the Ecuadorian shrimp farmers, who are involved in this case. None of the parent corporations are based in Florida. Some are based in New York, and one is based in Kansas. Even assuming that those parent corporations have standing to sue a tortfeasor for damages sustained by their subsidiaries, if the home states of the parent corporations want to provide a forum for this litigation, then the plaintiffs can file their suits there. There has been no allegation that Florida is the only forum in the United States where jurisdiction can be obtained.
*1125 While appellees also state in passing that Florida has an interest in controlling a Florida defendant, the affidavit of the appellees' attorney states that the primary thrust of this litigation regards the design and manufacture of the chemicals. The Florida defendant is not involved in either the design or manufacture of the chemicals. It is alleged to have provided expertise in the growing of bananas, including chemical expertise. The appellant corporation strenuously contests this characterization, noting that the companies named have no supervision or any other control over the banana farms in Ecuador. Notably, appellees' memorandum in opposition to the motions to dismiss never mentioned control of the Florida defendant as a public interest factor. Also, Kinney does not consider the residency of a Florida defendant as a public interest factor but rather as a private interest factor. Kinney, 674 So.2d at 93 n. 7.
Appellees point to a statement of the president of the Commission of International Affairs of the National Congress of Ecuador indicating that it would be in the best interest of Ecuador that this case be tried in another country because transnational companies may escape liability for the damage that their chemicals cause to Ecuadorian interests. This is contradicted by an affidavit from the Ecuadorian Ambassador to the United States claiming that this is an Ecuadorian problem which should be decided by Ecuador and not imposed on a court of Florida. We agree. The taxpayers of the state of Florida should not be required to pay for the resolution of the disputes of the citizens of another country, particularly where the connection with Florida is tenuous or nonexistent. If the United States should be obligated to provide a forum to resolve international disputes with multinational corporations, then it should be the responsibility of the federal court system, as the federal government is charged with the conduct of international affairs. Kinney, 674 So.2d at 89.
The final principle to consider in a public interest determination is the court's familiarity with the governing law when deciding the issue of forum non conveniens. While no determination has been made on the choice of law, the tort occurred in Ecuador. Under our choice of law principles, that locality's law would apply unless with respect to a particular issue some other locality has a more significant relationship to the injury. Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla.1980). Since foreign law will predominate in any event, no construction of Florida substantive law is implicated in the decisions which will be made in this case. Therefore, this too provides no public interest reason for retaining the case.

Conclusion
This case has presented one of the first opportunities to fully examine the application of Kinney to a case involving foreign plaintiffs in a Florida court. When the case was first filed, Houston permitted the suit to be maintained in Florida because one of the defendants was headquartered here. However, with the adoption of Kinney, it appears to be a classic example of the type of case that the Florida Supreme Court said, in no uncertain terms, should not be in a Florida court. Nor is our result here inconsistent with what the federal courts have done in similar product liability cases in which the accidents occurred outside the United States under the forum non conveniens law adopted in Kinney.[4]
We have determined that the trial court erred (1) in determining that Ecuador was not an adequate alternative forum; (2) in its application of Kinney principles to the private interest factors; and (3) in according the foreign plaintiffs a strong presumption in favor of their choice of forum. These errors combined to produce a result which is incompatible with Kinney. It is also an abuse of discretion. Canakaris, 382 So.2d at 1203. *1126 Because of these errors, we have reviewed the record and determined that the factors enunciated in Kinney require the dismissal of this case. On remand, the trial court has the authority to require conditions for dismissal which are consistent with Kinney and this opinion.
STONE and KLEIN, JJ., concur.
NOTES
[1] We acknowledge that in one affirmative defense in the Pink Star action, Lango-Taura asserted the negligence of third persons as an excuse for nonperformance. That is not a legal excuse for nonperformance where, as here, the contract was simply to provide a certain quantity and quality of product. See Holly Hill Fruit Prods. Co. v. Bob Staton, Inc., 275 So.2d 583 (Fla. 2d DCA 1973); see also Valencia Ctr., Inc. v. Publix Super Mkts., Inc., 464 So.2d 1267 (Fla. 3d DCA 1985)(discussing doctrines of frustration of commercial purpose and impossibility of performance). In any event Lango-Taura could show that its shrimp were killed by causes unrelated to its own negligence without having to prove the exact causes of the destruction of the shrimp in order to assert either defense. Therefore, there is no legal reason why this affirmative defense cannot be maintained without addressing the merits of the third and fourth-party causes of action.
[2] The defendants dispute this, as they claim that the testing done in Florida was done fifteen years ago and was not of the type to be useful in this litigation.
[3] We are aware, however, of the Convention on the Taking of Evidence Abroad In Civil or Commercial Matters, which is referred to by the appellants' experts on German and Swiss law. While those treaties are relied upon by the appellees to show that discovery would be easier when done through the United States, it appears that Germany has exempted itself from complying with the treaty provisions with respect to common law countries' requests for civil discovery by letters rogatory. Article 23, Hague Convention.
[4] For example, see Sibaja v. Dow Chem. Co., 757 F.2d 1215 (11th Cir.1985); Aguilar v. Dow Chem. Co., No. 86-4753 JGD (S.D.Cal.1987); Barrantes Cabalceta v. Standard Fruit Co., 667 F.Supp. 833 (S.D.Fla.1987), aff'd in part and rev'd in part on other grounds, 883 F.2d 1553 (11th Cir.1989); Proyectos Orchimex de Costa Rica, S.A. v. E.I. du Pont de Nemours & Co., 896 F.Supp. 1197 (M.D.Fla.1995); Delgado v. Shell Oil Co., 890 F.Supp. 1324 (S.D.Tex.1995); Sequihua v. Texaco, Inc., 847 F.Supp. 61 (S.D.Tex.1994).