# Third District Court of Appeal

## State of Florida

Opinion filed January 27, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D13-2092 & 3D13-2223
Lower Tribunal Nos. 12-26076 & 12-26072

_____

**Denise Abeid-Saba, et al.,**
Appellants/Appellees/Cross-Appellees,

vs.

**Carnival Corp., Carnival PLC, Costa Crociere, S.p.A., Costa Cruise Lines, Inc., and Joseph Farcus Architect, P.A.,**
Appellees/Appellants/Cross-Appellants.


Appeals from the Circuit Court for Miami-Dade County, Norma S. Lindsey and Spencer Eig, Judges.

Napoli Bern Ripka Shkolnik & Associates, LLP, and Louise R. Caro, for appellants/appellees/cross-appellees.

Arnold & Porter, LLP, and Thad T. Dameris, (Houston) and David J. Weiner (Washington, D.C.); Blank Rome LLP and John D. Kimball (New York), for appellees/appellants/cross-appellants.

Before LAGOA, SALTER, and FERNANDEZ, JJ.

LAGOA, J.

Appellant, Denise Abeid-Saba ("Abeid-Saba"), appeals from a non-final order granting Appellees, Carnival Corporation, Carnival Corporation & plc, Costa Cruise Lines, Inc., Costa Crociere, S.p.A., and Joseph Farcus, Architect, P.A.'s (collectively, "Carnival"), motion to dismiss for *forum non conveniens*.

Appellants/Cross-Appellees, Carnival, and Appellee/Cross-Appellant, Geoffrey Scimone ("Scimone"), appeal from a non-final order granting in part and denying in part Carnival's motion to dismiss for *forum non conveniens*. [1]

For purposes of this appeal, we consolidate the respective orders on appeal in case number 13-2092 ("Abeid-Saba") and case number 13-2223 ("Scimone II").

For the reasons set forth below, we affirm the order in Abeid-Saba and reverse in part and affirm in part the order in Scimone II.

I.    FACTUAL AND PROCEDURAL HISTORY

Both Abeid-Saba and Scimone II involve claims brought by passengers aboard the Italian-flagged cruise ship, MS Costa Concordia (the "Concordia" or "Ship"). On January 13, 2012, the Concordia departed Civitavecchia, Italy to begin a seven-day voyage to Savona, Italy. Both complaints allege that on January 13, 2012, the Ship ran aground after her Captain, Francesco Schettino, deviated from the planned course to execute a maneuver known as a "bow" or "sail-by

---

[1] Neither Abeid-Saba nor Scimone contest the dismissal of the non-U.S. plaintiffs. Indeed, counsel for Scimone conceded this issue during oral argument. As such, we affirm without further discussion both the Abeid-Saba order and the Scimone II order dismissing the non-U.S. plaintiffs.

2

salute."[2]   During the course of the maneuver, the Concordia collided with an underwater reef in Italian territorial waters causing catastrophic damage to her hull. This precipitated the evacuation of 3206 passengers, of whom approximately 100 were from the United States, and over 1000 crewmembers.  Most evacuees were taken to nearby Giglio Island.  Following the accident, a number of Italian agencies commenced investigations to uncover the cause or causes of the accident.

Within weeks of the accident, several passengers filed suit in the Eleventh Judicial Circuit Court of Florida.  See Scimone v. Carnival Cruise Lines, No. 12-3496 CA 40 (Fla. 11th Cir. Ct. Jan. 27, 2012) ("Scimone I").  After the number of plaintiffs grew, however, plaintiffs voluntarily dismissed Scimone I, divided the passengers into two groups, and on July 5, 2012, re-filed two separate actions: Abeid-Saba and Scimone II.

Abeid-Saba involves fifty-seven plaintiffs, of whom five are United States residents.  Scimone II involves fifty-two plaintiffs, of whom seventeen are United States residents.  Both groups of plaintiffs alleged twelve identical counts[3] against five named defendants: Carnival Corporation, a Panamanian Corporation with its

---

[2] This maneuver is also called a near-shore salute, and brings a ship close to shore to salute those on land.

[3] The counts were: (1) maritime negligence, (2) gross negligence, (3) negligent-product defect (under Italian law), (4) professional negligence, (5) intentional failure to warn, (6) intentional failure to abandon ship, (7) intentional failure to notify authorities, (8) corporate pattern and practice, (9) intentional infliction of emotional distress, (10) negligent retention, (11) fraudulent misrepresentation, and (12) fraudulent inducement.

principal place of business in Florida; Carnival Corporation & plc, incorporated in England and Wales with its principal place of business in London, England; Costa Cruise Lines, a Florida corporation with its principal place of business in Florida; Costa Crociere, S.p.A., a subsidiary of Carnival Corporation & plc and an Italian company, that has its principal place of business in Genoa, Italy; and Joseph Farcus, a Florida-licensed architect.[4]

On September 26, 2012, Carnival removed Abeid-Saba and Scimone II from the Eleventh Judicial Circuit Court of Florida to the United States District Court for the Southern District of Florida under the Class Action Fairness Act, and subsequently filed a motion to dismiss for *forum non conveniens*. On February 15, 2013, the U.S. District Court remanded both cases to the Eleventh Judicial Circuit without resolving Carnival's motion to dismiss on the merits.[5] After remand, Carnival moved to dismiss both Abeid-Saba and Scimone II, again based on *forum non conveniens*.

A.    THE TRIAL COURT'S ORDER IN ABEID-SABA

On May 20, 2013, the trial court in Abeid-Saba conducted a hearing on Carnival's motion to dismiss. In support of its motion, Carnival submitted several

---

[4] Unnamed John Does and John Does Inc. were also listed as defendants.

[5] The United States Court of Appeals for the Eleventh Circuit affirmed the District Court's remand. See Scimone v. Carnival Corp., 720 F.3d 876, 878-79 (11th Cir. 2013) (stating removal was improper under the Class Action Fairness Act and other federal statutes because neither the state court nor the plaintiffs had "proposed to try 100 or more persons' claims jointly").

4

sworn declarations and exhibits. In opposition, Abeid-Saba submitted a single sworn affidavit, along with various news articles and documents, none of which were sworn. Subsequent to the hearing, the trial court issued an extensive and thorough order containing detailed factual findings and extensive legal analysis, in which the trial court applied the four-part *forum non conveniens* test set out in Kinney System, Inc. v. Continental Insurance Co., 674 So. 2d 86 (Fla. 1996), as well as the Florida Supreme Court's opinion in Cortez v. Palace Resorts, Inc., 123 So. 3d 1085 (Fla. 2013). The trial court also analyzed each of the twelve counts asserted by the Abeid-Saba plaintiffs for purposes of evaluating the third prong of Kinney as modified by Cortez.

In its written order, the trial court found: (i) Italy is an adequate alternate forum; (ii) as to the private interest factors, Carnival presented positive evidence that material injustice would result if the case were litigated in Florida; (iii) the public interest factors favored litigating the case in Italy; and (iv) the Abeid-Saba plaintiffs could reinstate their claims in Italy without undue burden. Carnival's motion to dismiss was granted as to all plaintiffs—U.S. and non-U.S. alike.

### B. THE TRIAL COURT'S ORDER IN SCIMONE II

The trial court in Scimone II conducted a hearing on Carnival's motion to dismiss on May 20, 2013, subsequent to which, it issued its order. The trial court

5

found: (i) Italy is an adequate alternate forum; (ii) the private interest factors favored dismissal with respect to the non-U.S. plaintiffs, but not with respect to the U.S. plaintiffs; (iii) the public interest factors favored dismissal with respect to the non-U.S. plaintiffs, but not with respect to the U.S. plaintiffs; and (iv) removing the case from Florida to Italy would be unduly burdensome to the U.S. plaintiffs because they would have to transport evidence from the United States to Italy and have the evidence translated.

Abeid-Saba appeals the order granting Carnival's motion to dismiss. Scimone and Carnival appeal from the order granting in part and denying in part Carnival's motion to dismiss. Carnival argues both cases should be dismissed under the *forum non conveniens* doctrine. We agree. For the reasons set forth below, we affirm the order in Abeid-Saba and affirm in part and reverse in part the order in Scimone II.

## II.   STANDARD OF REVIEW

We review orders granting or denying a motion to dismiss on *forum non conveniens* grounds for an abuse of discretion. See Fla. R. Civ. P. 1.061(a); Rolls-Royce, Inc. v. Garcia, 77 So. 3d 855, 859 (Fla. 3d DCA 2012).

## III.   ANALYSIS

6

In Kinney, the Florida Supreme Court adopted the federal *forum non conveniens* test "[i]n response to [the] perceived burden being placed on Florida trial courts to adjudicate disputes unrelated to Florida." Cortez, 123 So. 3d at 1091. The four-part test provides:

> [1] As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. [2] Next, the trial judge must consider all relevant factors of *private* interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice. [3] If the trial judge finds this balance of private interests in equipoise or near equipoise, he must then determine whether or not factors of *public* interest tip the balance in favor of a trial in [another] forum. [4] If he decides that the balance favors such a . . . forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

Cortez, 123 So. 3d at 1091 (quoting Kinney, 674 So. 2d at 90). In Cortez, the Florida Supreme Court modified Kinney's third prong—the public interest prong—and required Florida courts to consider the public interest factors irrespective of whether the private interest factors are "in or near equipoise." See Cortez, 123 So. 3d at 1093 (holding that "public interest factors should always be considered as part of [a *forum non conveniens*] analysis") (adopting the approach taken by the United States Court of Appeals for the Eleventh Circuit in SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1100 n.5 (11th Cir. 2004)); see also Leon v. Millon Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001) (explaining that while the "private [interest] factors are 'generally

7

considered more important' . . . the better rule is to consider both" private and public interest factors).

The hallmark of a *forum non conveniens* inquiry is convenience; therefore, "controlling weight cannot be given to any one factor in the balancing process or the doctrine would lose much of the flexibility that is its essence." La Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983). "The defendant attempting to dismiss the action on forum non conveniens grounds bears the burden of proof on each element of the Kinney analysis." Telemundo Network Grp., LLC v. Azteca Int'l Corp., 957 So. 2d 705, 709 (Fla. 3d DCA 2007).

We begin our analysis by first considering the trial court's order in Abeid-Saba.

A.    AVAILABLE AND ADEQUATE ALTERNATIVE FORUM[6]

_____

[6] In four cases, federal district courts have dismissed actions against Carnival stemming from the Costa Concordia accident based on *forum non conveniens* grounds. See Giglio Sub s.n.c. v. Carnival Corp., No. 12-21680-CIV, 2012 WL 4477504 (S.D. Fla. Sept. 26, 2012), aff'd, 523 F. App'x 651 (11th Cir. 2013) (Giglio Sub, an Italian Corporation, and Francesco Onida, an Italian citizen, filed a class action on behalf of fishermen, property owners, business owners, and wage earners on Giglio Island, alleging negligence, gross negligence and nuisance); Perez v. Carnival Corp., No. 12-23194-CIV (S.D. Fla. Feb. 22, 2013) (one-hundred fifty-four plaintiffs, two of which were residents of the United States, alleged negligence, negligent training, and negligent retention); Warrick v. Carnival Corp., No. 12-61389-CIV, 2013 WL 3333358 (S.D. Fla. Feb. 4, 2013) (five plaintiffs, all residents of the United States, alleged breach of contract, unjust enrichment, fraudulent inducement, fraudulent misrepresentation, maritime negligence, gross negligence, intentional infliction of emotional distress, negligent hiring, negligent supervising, and negligent retention); Lobaton v. Carnival Corp., No. 12-cv-598 (N.D. Ill. Sept. 11, 2013) (Lobaton, a resident of Peru, sought to bring various tort

While Abeid-Saba does not argue on appeal that Italian civil courts are unavailable or inadequate, we nonetheless briefly address this prong of the four-part *forum non conveniens* inquiry as it was raised before the trial court.

The first prong of the *forum non conveniens* analysis entails two separate considerations: whether the alternative forum is available and whether it is adequate. See Cortez, 123 So. 3d at 1091. "An alternative forum is 'available' when that forum can assert jurisdiction over the litigation sought to be transferred." Id. at 1091-92. The "chief concern" here is the "ability to perfect service of process." Kinney, 674 So. 2d at 90.

In both Abeid-Saba and Scimone II, Carnival stipulated to accept service of process and agreed to submit to the jurisdiction of Italian courts. Carnival also agreed to toll the statute of limitations and respect any post-appeal judgments entered by Italian courts. The Abeid-Saba trial court, therefore, conditioned its dismissal on Defendants honoring their stipulations and on the Italian court accepting jurisdiction. We find that the trial court did not abuse its discretion in finding that an alternative forum is available.

We now turn to the question of whether Italy is an adequate forum. "An adequate forum need not be a perfect forum." Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1283 (11th Cir. 2001). "An alternative forum is adequate if it

---

actions individually and as a class representative.).

9

provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." King v. Cessna Aircraft Co., 562 F.3d 1374, 1382 (11th Cir. 2009). An alternate forum is inadequate where the available remedies are "clearly unsatisfactory" or where there is "no remedy at all." Satz, 244 F.3d at 1283 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981)). "[S]ome inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." Borden, Inc. v. Meiji Milk Prods. Co., 919 F.2d 822, 829 (2d Cir. 1990) (quoting Shields v. Mi Ryung Constr. Co., 508 F. Supp. 891, 895 (S.D.N.Y. 1981)).

The Abeid-Saba plaintiffs argued that Italian civil courts are inadequate because the litigation will take longer in Italy and each plaintiff will be required to obtain individual counsel. After hearing conflicting testimony on these points, the trial court in Abeid-Saba found that: (i) "a delay of 'many, many' years is a legally insufficient standard on which to judge a foreign forum's remedy as inadequate in a highly complex case," Ciba-Geigy Ltd. v. Fish Peddler, Inc., 691 So. 2d 1111, 1117 (Fla. 4th DCA 1997); and (ii) the lack of a class action procedure does not render a forum inadequate, Giglio Sub s.n.c. v. Carnival Corp., No. 12-21680-CIV, 2012 WL 4477504 (S.D. Fla. Sept. 26, 2012), aff'd, 523 F. App'x 651 (11th Cir.

10

2013). We find the trial court did not abuse its discretion in finding that Italy was an adequate alternative forum.

### B.    PRIVATE INTEREST FACTORS

If a trial court determines that an adequate alternative forum exists, it must then "consider all relevant factors of *private* interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice." Cortez, 123 So. 3d at 1091 (quoting Kinney, 674 So. 2d at 90). Generally, an examination of the private interests involves four concerns: "access to evidence, access to witnesses, enforcement of judgments, and the practicalities and expenses associated with the lawsuit." 123 So. 3d at 1092.

Abeid-Saba argues that the trial court abused its discretion with regard to private interest factors by: (i) not affording plaintiffs proper deference regarding their choice of forum, (ii) improperly accessing the sources of proof, and (iii) failing to account for witness availability.

### 1.    Presumption in Favor of Plaintiffs' Choice of Forum

As part of its analysis of the private interest factors, the trial court must "[weigh] in the balance a strong presumption against disturbing plaintiffs' initial forum choice." Cortez, 123 So. 3d at 1091 (quoting Kinney, 674 So. 2d at 90). "This presumption in favor of the plaintiffs' initial forum choice in balancing the private interests is at its strongest when the plaintiffs are citizens, residents, or

11

corporations of this country." SME Racks, 382 F.3d at 1101. The Eleventh Circuit has held that a reviewing court "require[s] positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any . . . discretion as may exist to deny a United States citizen access to the courts of this country." SME Racks, 382 F.3d at 1101 (quoting La Seguridad, 707 F.2d at 1308 n.7). Accord Cortez, 123 So. 3d at 1096. "A citizen's forum choice should not be given dispositive weight, however." Piper Aircraft Co., 454 U.S. at 256 n.23.

Rather than treating the plaintiffs' choice of forum as a factor "weighing in the balance" of the presumption in favor of its choice, Abeid-Saba asks the choice be analyzed in isolation and be given conclusive and dispositive force. This is contrary to what the law requires. In analyzing the private interest factors in the case, the trial court acknowledged the presumption in favor of the five Abeid-Saba plaintiffs who are U.S. residents. The trial court concluded that, on balance, litigating in Florida would result in material and manifest injustice to Carnival because the vast majority of evidence is located in Italy, as are virtually all of the witnesses.

2.    Access to Evidence and Witnesses

When assessing the access to evidence and the availability of witnesses, "the [trial] court must scrutinize the substance of the dispute . . . to evaluate what proof

12

is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988). "Perhaps the most important 'private interest' of the litigants is access to evidence." Ford v. Brown, 319 F.3d 1302, 1308 (11th Cir. 2003).

Here, the trial court undertook a count-by-count analysis of the twelve causes of action brought by Abeid-Saba and found that "even given the heightened presumption in favor of the United States residents' choice of forum . . . Defendants have presented positive evidence that litigating in this court would result in a material, manifest injustice due to the access to relevant evidence and the comparative cost and difficulty of presenting [in Florida]."

Specifically, as to the causes of action, the trial court found:

- Counts I & II (Maritime Negligence and Gross Negligence): As to the elements of breach, causation, and damages, the evidence is "overwhelmingly located abroad," and "[m]uch of the evidence for all of the claims will be in Italian."

- Count III (Negligence—Product Defect): "[A]lleges a violation of the Italian civil code and seeks damages pursuant to Italian law."

- Count IV (Professional Negligence): Fincantieri (an Italian corporation with headquarters in Italy that designed and built the Concordia). "Virtually all

13

of the evidence" relating to the alleged design flaws of safety and emergency equipment is located in Italy.

- Counts V, VI, VII, & IX (Intentional Failure to Warn; Intentional Failure to Abandon Ship; Intentional Failure to Notify Authorities; and Intentional Infliction of Emotional Distress): "[N]early all of the potential eye witnesses, except for the five United States resident plaintiffs herein are in Italy. In addition, the ship and all of the documents collected during the Italian government's inquiry into the Accident are in Italy."

- Count VIII (Corporate Pattern and Practice): To the extent this claim may require evidence that is located in Florida, Defendants have stipulated to produce evidence in Italy.

- Count X (Negligent Retention): Captain Schettino is located in Italy, as are all of the records and documents pertaining to his retention.

- Counts XI & XII (Fraudulent Misrepresentation and Fraudulent Inducement): Most of the evidence is located in Italy, and to the extent evidence is located in Florida or elsewhere, Defendants have stipulated to produce the evidence in Italy.

Abeid-Saba argues that the trial court ignored that fact that much of the documentary evidence that would be required to litigate this dispute *can* be produced in English. Abeid-Saba also claims that under the Italian criminal code,

14

any person injured as a result of the crash will be entitled to access the evidence used in the criminal proceedings. We find this argument without merit, as it does not change the fact that the evidence is *located* in Italy. Additionally, all of the non-documentary evidence is located in Italy. For example, the wreckage, voyage data recorder, bridge voice recorder, ship cameras, and the vessel's electronic navigation system are all in the custody on Italian authorities.

With respect to the availability of witnesses, Abeid-Saba argues that a handful of potential defense witnesses and five of the plaintiffs are located in the United States. The location of these witnesses is, of course, a factor the trial court must consider; however, the fact that witnesses are here in the United States does not end the inquiry. Further, the location of the vast majority of other potential witnesses led the trial court to conclude that Italy is the more convenient forum. Of the 3206 passengers aboard the Costa Concordia, two-thirds are European citizens. None of the 1223 crewmembers are United States citizens. Any number of these passengers and/or crewmembers are potential witnesses.

Just as important as the availability of potential eye witnesses is the availability of potential non-party witnesses, especially those responsible for safety inspections and certifications, manufacturing and designing the Ship, and those who trained the Costa Concordia's crew. Fincantieri – Cantieri Navali Italiani

15

S.p.A. (the ship's builder), the Italian Administration, and Italian Classification Society RINA, S.p.A. ("RINA") are all located in Italy.

An abuse of discretion occurs "when the judicial action is arbitrary, fanciful, or unreasonable or where no reasonable man would take the view the trial court adopted." Johnson v. State, 47 So. 3d 941, 943 (Fla. 3d DCA 2010). There is nothing "arbitrary, fanciful, or unreasonable" about the findings and conclusions contained in the trial court's well-reasoned order. The trial court in Abeid-Saba considered each cause of action and determined that the evidence required to litigate the dispute could be more conveniently obtained in Italy, and that the vast majority of the witnesses are located in Italy. As such, we find that the trial court did not abuse its discretion.

### C.    PUBLIC INTEREST FACTORS

The third step in the *forum non conveniens* inquiry is to "determine whether or not factors of *public* interest tip the balance in favor of a trial in [another] forum." Cortez, 123 So. 3d at 1091 (quoting Kinney, 674 So. 2d at 90). While it was once assumed that trial courts need only consider the public interest factors if the private interest factors were at or near equipoise, the Florida Supreme Court modified the rule, holding "public interest factors, including Florida's interest in the dispute, should always be considered as part of the forum non conveniens analysis." Cortez, 123 So. 3d at 1097 (emphasis added). See also Leon, 251 F.3d

16

at 1311 (stating "even though the private factors are 'generally considered more important' than the public factors, the better rule is to consider both factors in all cases"). The focus of the public interest factors is "whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it." Kinney, 674 So. 2d at 92 (quoting Pain v. United Techs. Corp., 637 F.2d 775, 791 (D.C. Cir. 1980)).

Abeid-Saba claims a nexus between this dispute and Florida because although the Concordia never sailed out of Florida (or within United States territorial waters for that matter), other Costa Crociere vessels have. Abeid-Saba also claims that the safety of cruise ships, generally, is paramount in Florida, and that Florida has a history of resolving disputes involving cruise ships. Finally, Abeid-Saba argues that because cruise lines frequently select Florida in their forum selections clauses, *ipso facto*, Florida is the most convenient venue. Abeid-Saba's generalized arguments are weak. As Carnival points out, this case is not about other Costa ships, other cruise lines, other cruises, or the cruise line industry in general. Additionally, the forum-selection clause included on the Costa Concordia tickets listed Genoa, Italy as the forum for litigation.

Abeid-Saba relies on Cortez for the proposition that Florida is the proper forum. Cortez, however, is distinguishable. In Cortez, the sole plaintiff was a United States citizen who sued three Florida defendants for their allegedly

negligent sale and marketing of a vacation package. <u>Cortez</u>, 123 So. 3d at 1088. All three defendants maintained their principal place of business in Florida, <u>id.</u> at 1089, and the allegedly negligent conduct took place in Miami. <u>Id.</u> at 1097. Defendants, claiming the conduct took place in Mexico, moved for dismissal based on *forum non conveniens*. The trial court granted the motion and this Court affirmed. <u>See</u> <u>Rabie Cortez v. Palace Holdings, S.A. de C.V.</u>, 66 So. 3d 959 (Fla. 3d DCA 2011). The Florida Supreme Court quashed this Court's decision, finding that all of the alleged negligent action took place in Florida, and "Florida [had an] interest in hearing disputes involving negligent conduct [that took place in the State.]" <u>Cortez</u>, 123 So. 3d at 1098.

Unlike <u>Cortez</u>, here, there are fifty-seven plaintiffs, fifty-two of whom are not residents of the United States. Abeid-Saba's allegations "center on conduct by non-Florida Defendants in Italy."[7] Virtually all of the allegedly negligent conduct took place in Italy.

---

[7] The trial court further found that neither Carnival Corporation nor Costa Cruise Lines (Florida defendants) were involved in the: "hiring, training, promotion, or supervision of the Costa Concordia's crew"; "operation, charter, design, or construction" of the Ship; "implementation of safety standards"; or "evacuation procedures." "The Costa Concordia is owned and operated by Costa Crociere, an Italian company." The trial court also found that Joseph Farcus, a Florida-licensed architect, was the interior designer and did not design the naval architecture. Even if these factual findings were erroneous, the fact that some of the defendants have strong ties to Florida is not dispositive. <u>See</u> <u>Cortez</u>, 123 So. 3d at 1097 ("the fact that the defendants are located in this country, and especially in this state, is one indication that it would be less burdensome for the defendants to defend suit in this country than it would be for the plaintiff to litigate in a foreign country") (citation

18

Additional facts make clear that this litigation has a close nexus to Italy, "sufficient to justify [Italy's] commitment of judicial time and resources to it." Kinney, 674 So. 2d at 92. The Concordia is owned and operated by Costa Crociere, S.p.A., an Italian corporation. Costa Crociere, the Concordia, its crew, and Captain Schettino were regulated, inspected, and certified by Italian authorities. The trial court's order stated "[t]he Costa Concordia's design was approved and certified by the Italian Administration and RINA as satisfying Italian and international standards." Italian authorities are currently conducting investigations into the accident. Additionally, four of the other five cases relating to the accident have been dismissed by courts in the United States on *forum non conveniens* grounds. Litigating such similar cases based on the same accident and involving the same evidence in two different fora would seem to be a tremendous waste of judicial resources.

Finally, this is not a case is which Abeid-Saba would have to utilize obscure causes of action that are essentially not cognizable in the Italian courts, nor will Abeid-Saba's potential causes of action in Italy amount to no remedy at all. See Cortez, 123 So. 3d at 1098. As the trial court explained, "Italian law offers numerous avenues for Plaintiffs to seek and recover damages . . . . Italian

omitted) (internal quotation marks omitted).

19

procedural law offers substantial rights and protections to litigants that ensure trials are fair, open, and efficient."

Based on these facts, the trial court in <u>Abeid-Saba</u> concluded that "Florida does not have a strong interest in this dispute." Thus, even when accounting for the strong presumption in favor of Abeid-Saba's choice of forum, the trial court found that the public interest factors favor litigation in Italy. We find that the trial court's conclusion is reasonable, well-founded, and should not be disturbed.

D.     <u>REINSTATEMENT OF CLAIMS IN ITALY</u>

The final prong of a *forum non conveniens* inquiry requires the trial court to "ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice." <u>Cortez</u>, 123 So. 3d at 1091 (quoting <u>Kinney</u>, 674 So. 2d at 90). Abeid-Saba's argument that refiling in Italy will cause undue inconvenience is without merit as Carnival stipulated to accept service of process and agreed to submit to the jurisdiction of Italian courts. Carnival also agreed to toll the statute of limitations, respect any post-appeal judgments entered by Italian courts, and make relevant evidence available in Italy. Because these type of stipulations favor dismissal, we conclude that the trial court in <u>Abeid-Saba</u> did not abuse its discretion in finding that the plaintiffs can reinstate their suit in the alternative forum of Italy without undue inconvenience or prejudice. See <u>Cortez</u>, 123 So. 3d at 1094 (the fourth prong of a *forum non conveniens* inquiry is

20

generally satisfied when "the courts of the alternative forum are genuinely open and available to provide a convenient remedy and . . . the moving party stipulate[s] to treat the action in the new forum as though it had been filed in that forum on the date it was filed in Florida"); Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1335 (11th Cir. 2011) (same).

E.      THE SCIMONE II ORDER

We now turn to the trial court's order in Scimone II. We affirm the trial court's order dismissing the non-U.S. plaintiffs, as Appellants do not appeal the dismissal of the non-U.S. plaintiffs.

We reverse, however, the order regarding the U.S. plaintiffs as the trial court failed to conduct a proper "private interest" analysis. "A correct 'private interest' analysis begins with the elements of the plaintiff's causes of action. The court must then consider the necessary evidence required to prove and disprove each element. Lastly, the court should make a reasoned assessment as to the likely location of such proof." Ford v. Brown, 319 F.3d 1302, 1308 (11th Cir. 2003); see also Warrick v. Carnival Corp., No. 12-61389-CIV, 2013 WL 3333358 (S.D. Fla. Feb. 4, 2013). Because the trial court in Scimone II failed to consider the necessary evidence required to prove and disprove each element of the plaintiffs' causes of action, we find that the trial court abused its discretion. Accordingly, we reverse that portion of the trial court's ruling in Scimone II.

21

IV.   CONCLUSION

In conclusion, the trial court's order in <u>Abeid-Saba</u> is affirmed and the trial court's order in <u>Scimone II</u> is affirmed in part and reversed in part.  However, as <u>Abeid-Saba</u> and <u>Scimone II</u> have been consolidated, we must address what the trial court in <u>Scimone II</u> must do upon remand.

Plaintiffs in both <u>Abeid-Saba</u> and <u>Scimone II</u> are represented by the same counsel.[8]  At no point in the proceedings before either the trial court or before this Court has counsel suggested that the evidence to be presented on the <u>Kinney</u> or <u>Cortez</u> factors differs in any material way between <u>Abeid-Saba</u> and <u>Scimone II</u>. Accordingly, rather than require the parties and the trial court to expend further resources unnecessarily in <u>Scimone II</u>, we remand <u>Scimone II</u> with instructions that the trial court grant Carnival's motion to dismiss for forum non conveniens based on the trial court's analysis of the <u>Kinney</u> and <u>Cortez</u> factors in the <u>Abeid-Saba</u> case.

AFFIRMED in <u>Abeid-Saba</u>; AFFIRMED IN PART and REVERSED IN PART in <u>Scimone II</u> and REMANDED with instructions.

---

[8] Indeed, the two cases originated as a single case, but were subsequently split into two separate actions.