DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOHN GORDON,**
Appellant,

v.

**MARLANA A. BETHEL,** a/k/a **MARLANA KRAUSE BETHEL,**
and **JOHNNY A. BETHEL,**
Appellees.

No. 4D21-3588

[April 19, 2023]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE-20-011629.

Jason Ari Smith of the Law Offices of Jason Ari Smith, P.A., Oakland Park, for appellant.

Brian Recor of Recor Rieber, P.A., Miami, for appellees.

WARNER, J.

Appellant, John Gordon, timely appeals a final order granting appellees Marlana Bethel's and Johnny Bethel's motion to dismiss for forum non conveniens, and dismissing Gordon's amended complaint with prejudice. The trial court found that The Bahamas was a more convenient forum for Gordon's defamation claim against the Bethels. Because, under a *Kinney*[1] analysis, the public and private interest factors do not favor The Bahamas as the forum, and because the court failed to accord the very strong presumption in favor of Florida jurisdiction in a suit by a Florida resident, the court abused its discretion in dismissing this case. We reverse.

Gordon filed the underlying lawsuit against the Bethels for defamation. Gordon, an experienced marine surveyor, adjuster, investigator, and salvage master, is a resident of Broward County. He operates his business endeavors out of Broward and has clients/customers in Florida.

---

[1] *Kinney Sys., Inc. v. Cont'l Ins. Co.*, 674 So. 2d 86 (Fla. 1996).

In September 2019, when Hurricane Dorian hit Scotland Cay in The Bahamas, it caused extensive damage. Among the wreckage caused by the hurricane was the vessel, the "Grace Sea." The vessel had been damaged, but according to Gordon, while the vessel had taken on water at a dock in Scotland Cay, the engine was not submerged, and it was not leaking fuel or oil, so it was not a peril. According to the National Vessel Documentation Center, the United States Department of Homeland Security and the United States Coast Guard certified the vessel as owned at the time by Grace Marine LLC, a company with a Delaware address. The vessel bore a United States flag and its registered hailing port was Okeechobee, Florida.

Days after the hurricane, the owner of Grace Marine, Gilbert Culbreth, Jr., filed a claim with his insurer, GEICO Marine Insurance. GEICO then had its subsidiary BoatUS attempt to recover the vessel. Around September 12, 2019, the vessel was tagged with a decal stating: "POSTED-NO TRESPASSING! Do Not Board or Move Boat Without Permission From BoatUS or Vessel Owner." The decal also listed contact numbers for BoatUS. In the following days, a BoatUS contractor attempted to take possession of the vessel, but the vessel had been tied to the dock and padlocked so that it could not be moved.

On September 27, 2019, Grace Marine sold the vessel to GEICO, and the bill of sale stated the vessel was sold free and clear of any encumbrances of any kind and nature. GEICO contacted Gordon on October 9 to try to recover the vessel. Gordon and a BoatUS representative, David Wiggins, located the vessel in Scotland Cay Marina and observed it tied to the dock and padlocked. While at the marina, Gordon and Wiggins encountered appellee Mr. Bethel, who told them that he had salvaged the vessel. Because Mr. Bethel had not been authorized to salvage the vessel, Gordon and Wiggins told Mr. Bethel not to move or tamper with the vessel. However, the vessel was removed from the marina without GEICO's permission.

After BoatUS's efforts to locate the vessel failed, Gordon was asked to locate the vessel again. On February 9, 2020, Gordon located the vessel at the Bethels' home on a trailer bearing Culbreth's name. Gordon contacted local police to let them know that he had been unable to get in contact with the Bethels and that the Bethels had not been authorized to salvage the vessel. Later that same day, Mr. Bethel contacted Gordon and gave him a salvage invoice for $24,500 which included salvaging the "sunken" vessel and renting a trailer to store the vessel.

2

On April 29, 2020, after BoatUS and GEICO were unable to retake possession of the vessel, GEICO executed a bill of sale transferring ownership to Gordon.

The Bethels acknowledge that they salvaged the vessel but maintain that they found the vessel submerged and unable to float or drive. They claim that Gordon came to their private marina and attempted to take the boat back several times, including one time accompanied by Bahamian police. Gordon was not able to obtain the boat because he did not have the appropriate paperwork showing he was the owner.

In May of 2020, Ms. Bethel admitted that she published a series of Facebook posts which are the subject of Gordon's defamation lawsuit. According to the verified amended complaint, on May 30, 2020, Ms. Bethel posted a photograph of Gordon on her Facebook account with the following statement:

> Hey Abaco! **This is John Gordon from Boat US** in our private marina at 10:30 this morning while we are supposed to be on lockdown. **This guy is the biggest crook I have encountered since Dorian came through**. Does anyone know if he has a legal right to still be in Abaco trying to take boats? We have had numerous conversations with other Abaconians that have had questionable run ins with him. He is being super sketchy right now and I'd like to find out if he is here legally.

The post was accessed, shared, and liked by Florida residents named in the complaint. Other Facebook posts by Ms. Bethel stated that BoatUS and Gordon were in a "scam business together"; Gordon was "shady as hell"; he "just made off" with the boat and "stole it out of the marina"; and he was "raping boats in the Bahamas." In another Facebook post and video, Ms. Bethel insinuated that Gordon was not a legitimate salvager. Ms. Bethel also allegedly disparaged Gordon to companies doing business in Florida, GEICO and/or BoatUS, and caused others to do the same.

Gordon filed a three-count complaint in Broward County: count one for defamation against Ms. Bethel; count two for conspiracy to defame against both Mr. and Ms. Bethel; and count three against another defendant who is not party to this appeal. After the Bethels were served in The Bahamas, they filed a motion to dismiss based on forum non conveniens. With the motion, the Bethels also each filed an affidavit. Gordon then filed an amended complaint with the same counts as the original complaint, but

the amended complaint was verified.  Gordon also filed an affidavit and a response in opposition to the Bethels' motion.

After reviewing the affidavits and holding a hearing on the motion, the trial court granted the Bethels' motion to dismiss, concluding that the public and private interest factors favored The Bahamas.  The court focused on what it perceived was the Bethels' defense of truth to Gordon's defamation claim.  The court determined that the majority of witnesses were in The Bahamas, and discounted the witnesses in Florida.  The court also found that public interests tipped in favor of The Bahamas as more people were "affect[ed] over there."  Further, the court found that the expense of litigation favored The Bahamas, and the court presumed any judgment would have to be enforced in The Bahamas.

After the oral ruling, the trial court allowed Gordon to add some points to the record, including that the amended complaint was verified and that Ms. Bethel made disparaging phone calls to GEICO and to BoatUS in the United States from her Florida phone number on the salvage invoice. Gordon also pointed out that he owned the vessel when these Facebook posts were being made and thus had a right to claim the vessel. Nevertheless, the court issued a written order, granting the Bethels' motion to dismiss under Florida Rule of Civil Procedure 1.061(a) "for the reasons stated on the record."  Gordon appeals the dismissal.

## Analysis

### Standard of Review

Florida Rule of Civil Procedure 1.061(a) sets forth the basis upon which a case may be dismissed for forum non conveniens, and provides that "[t]he decision to grant or deny the motion for dismissal rests in the sound discretion of the trial court, subject to review for abuse of discretion."  In a forum non conveniens case, "the exercise of judicial discretion must be within the limits of applicable principles of law and equity." *Ciba-Geigy Ltd. v. Fish Peddler*, 691 So. 2d 1111, 1115 (Fla. 4th DCA 1997).  "Thus, discretion may be arbitrarily exercised where principles of law are not followed." *Id.*  Further, where "the trial court's decision is not based on live testimony, '[t]he presumption of correctness given to a trial court's rulings . . . is lessened, because the appellate court has everything the trial court had before it.'" *Deluca v. Hislop,* 868 So. 2d 1254, 1257 (Fla. 4th DCA 2004) (alteration in original) (quoting *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 621 (Fla. 4th DCA 1999)).

4

**Merits**

"The common law doctrine of forum non conveniens, which translates to mean 'inconvenient forum,' is an equitable, judicially crafted rule designed to allow a court to dismiss, in certain limited circumstances, a lawsuit with little connection to Florida that would be better suited and fairly litigated elsewhere." *Cortez v. Palace Resorts, Inc.*, 123 So. 3d 1085, 1090 (Fla. 2013).

Our supreme court in *Kinney System, Inc. v. Continental Insurance Co.*, 674 So. 2d 86 (Fla. 1996), adopted the federal doctrine of forum non conveniens. Rule 1.061(a) codifies the federal forum non conveniens standard, allowing for an action to be dismissed on the ground that a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida when:

> (1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;
>
> (2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;
>
> (3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and
>
> (4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.

Fla. R. Civ. Pro 1.061(a); *Kinney*, 674 So. 2d at 94.

The defendant invoking forum non conveniens "bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007); *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009) (same). Further, "[a] defendant seeking dismissal on forum non conveniens grounds bears the burden of persuasion as to each *Kinney* factor." *Bridgestone/Firestone N. Am. Tire, LLC v. Garcia*, 991 So. 2d 912, 916 (Fla. 4th DCA 2008).

In reviewing a motion to dismiss for forum non conveniens, the trial court must treat the complaint's factual allegations as true and consider those allegations in the light most favorable to the plaintiffs. *Cortez*, 123 So. 3d at 1088 n.2. All reasonable inferences should also be drawn in the plaintiff's favor. *See Otto Candies, LLC v. Citigroup, Inc.*, 963 F. 3d 1331, 1336 (11th Cir. 2020) ("[W]e accept as true the factual allegations in the complaint to the extent they are uncontroverted by affidavits or other evidence, or have not been challenged in the context of an evidentiary hearing. We also draw all reasonable inferences in favor of the plaintiffs."); *see also Lambert v. Melia Hotels Int'l S.A.*, 526 F. Supp 3d 1207 (S.D. Fla. 2021) ("When affidavits conflict, the court is inclined to give greater weight to the plaintiff's version of the . . . facts and to construe such facts in the light most favorable to the plaintiff.") (citation omitted).

Here, Gordon filed a verified complaint as well as an affidavit, and the Bethels each filed an affidavit. We review each of the *Kinney* factors as applied to those filings.

### (1)  Another Available and Adequate Forum:

Consideration of the first *Kinney* factor requires determining both the availability and adequacy of the alternate forum, which in this case is The Bahamas. *See Bridgestone*, 991 So. 2d at 916 (citing *Ciba-Geigy Ltd.*, 691 So. 2d at 1115). "The availability requirement is met when the defendant seeking dismissal establishes that the foreign court can assert jurisdiction over the litigation sought to be transferred." *Bridgestone*, 991 So. 2d at 916. "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Id.* (quoting *Kinney*, 674 So. 2d at 90).

Here, in the Bethels' affidavits, they stipulate to service and agree to submit to the jurisdiction of The Bahamas. An alternative forum is only inadequate if the remedy clearly amounts to no remedy at all. *Bridgestone*, 991 So. 2d at 917; *see also Ciba-Geigy Ltd.*, 691 So. 2d at 1115 (same). Courts have also held that "a forum may be inadequate if it is grossly inefficient or given to extreme levels of partiality." *Cellnet 7, Inc. v. Lainez*, 215 So. 3d 137, 140 (Fla. 3d DCA 2017) (citation omitted). Gordon conceded at the hearing that The Bahamas was an adequate and available forum. The Third District also found The Bahamas to be an adequate and available forum in *Resorts International v. Spinola*, 705 So. 2d 629, 630 (Fla. 3d DCA 1998).

### (2) The "Balance of Private Conveniences"

"With respect to the private interests [*Kinney* factor], courts begin with the presumption that a domestic plaintiff has chosen a sufficiently convenient forum, and it is therefore incumbent upon the defendant 'to prove vexation and oppressiveness that are out of all proportion to the plaintiff's convenience.'" *Otto Candies*, 963 F. 3d 1338–39 (quoting *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1314 (11th Cir. 2001)). "A defendant invoking forum non conveniens with respect to a domestic plaintiff therefore 'bears a heavy burden in opposing the plaintiff's chosen forum.'" *Id.* at 1339 (quoting *Sinochem Int'l Co.*, 549 U.S. at 430). "The defendant must offer 'positive evidence of unusually extreme circumstances,' and the district court must be 'thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" *Id.* (quoting *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica*, 382 F.3d 1097, 1101 (11th Cir. 2004)); *see also Cortez*, 123 So. 3d at 1096 (same). "[W]hen the plaintiff is a citizen or resident of the United States, and the alternative forum is a foreign country, the defendant's burden to overcome this presumption is especially high." *Cortez*, 123 So. 3d at 1096.

In analyzing the private interest factors, "the trial court must weigh the 'balance of private conveniences'" and focus on four concerns: "access to evidence, access to witnesses, enforcement of judgments, and the practicalities and expenses associated with the lawsuit." *Cortez*, 123 So. 3d at 1092 (quoting *Kinney*, 674 So. 2d at 91); *see also Publicidad Vepaco, C.A. v. Mezerhane*, 176 So. 3d 273, 278 (Fla. 3d DCA 2015) (same).

"A correct 'private interest' analysis begins with the elements of the plaintiff's causes of action. The court must then consider the necessary evidence required to prove and disprove each element." *Abeid-Saba v. Carnival Corp.*, 184 So. 3d 593, 605 (Fla. 3d DCA 2016) (quoting *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003)). The court "should make a reasoned assessment as to the likely location of such proof." *Abeid-Saba*, 184 So. 3d at 605 (quoting *Ford*, 319 F. 3d at 1308). In assessing the access to evidence and witnesses, "the [trial] court must scrutinize the substance of the dispute . . . to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Abeid-Saba*, 184 So. 3d at 602 (alteration in original) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988)).

Here, Gordon filed a count for defamation against appellee Ms. Bethel and conspiracy to defame against both Mr. and Ms. Bethel. "Defamation

has the following five elements: (1) publication; (2) falsity; (3) actor must act . . . at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citation omitted). A civil conspiracy has the following elements: "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006).

The trial court did not look at all the elements necessary for Gordon to prove defamation or conspiracy to defame. Instead, the trial court focused on the Bethels' truth defense to defamation, stating:

> I understand how you're saying they posted it there, but people read it here. But at the end of the day . . . . It's all defamation. And a defense to defamation is truth and so, you would have to look beyond the statements as to what actually happened. And when you do that, it's an incident where your client went to the Bahamas and the incident underlying these statements all happened in the Bahamas. All the witnesses would be in the Bahamas. Bahamian law certainly might come into play with that.

By focusing on the truth defense, the court did not consider the elements necessary for Gordon to prove defamation. As to element of publication, besides the Facebook posts, Gordon alleged that Ms. Bethel made phone calls defaming him to GEICO and BoatUS in Florida and in the United States which evidence and witnesses would be located in Florida or in the United States, not The Bahamas. Further, to prove the falsity of Bethel's allegations of theft, Gordon would have to prove that he was the boat's lawful owner, which requires documents and witnesses in Florida. Thus, Gordon's proof was almost exclusively located in the United States and not The Bahamas.

As to damages, Gordon claimed the defamatory statements caused harm to "[his] reputation and standing in Florida because he is a Florida resident, his business endeavors are based out of Florida, and clients/customers of Mr. Gordon are located in Florida." He also claimed damage to his Florida business. The court did not acknowledge that Gordon's damages witnesses would include representatives of GEICO and BoatUS who also were located in Florida and the United States.

Finally, Ms. Bethel's statements accused Gordon of being a "crook" and of attempting to steal the boat. Accusations of criminal conduct are defamatory per se. *Blake v. Giustibelli*, 182 So. 3d 881, 884 (Fla. 4th DCA 2016). Because the trial court did not address the elements of Gordon's claim and instead focused solely on the Bethels' alleged defense, the court failed to analyze the private interest factors correctly. *See Abeid-Saba*, 184 So. 3d at 605. We conclude the private interest factors favor retaining jurisdiction in Florida.

"An examination of private interests, although a term of expansive scope, essentially focuses on four concerns: [1] access to evidence, [2] access to witnesses, [3] enforcement of judgments, and [4] the practicalities and expenses associated with the lawsuit." *Mezerhane*, 176 So. 3d at 278 (alteration original) (quoting *Cortez*, 123 So. 3d at 1092).

**(a) Access to Evidence and Witnesses**

Gordon contends that his witnesses were located in Florida and elsewhere in the United States as shown in his affidavit and sworn amended complaint. These witnesses include but are not limited to: (i) himself; (ii) representatives of GEICO and BoatUS, in Florida and elsewhere in the U.S., who would testify as to receiving Ms. Bethels' phone calls defaming Mr. Gordon; (iii) representatives of GEICO and BoatUS, in Florida and elsewhere in the U.S., who would testify as to the historical business relationship with Mr. Gordon prior to the events giving rise to this case and the impact the defamatory statements had on the business relationship; (iv) representatives of GEICO and BoatUS, in Florida and elsewhere in the U.S., who would testify as to the underlying events giving rise to this case, such as efforts to salvage the vessel, the purchase of the vessel from the original owner, and sale of the vessel to Mr. Gordon; and (v) all of the individuals who accessed, liked, shared, and commented upon Ms. Bethel's defamatory Facebook posts in Florida, including the Bethels' daughter residing in Florida. The evidence of Gordon's title to the boat is located in Florida or in the United States. Damage to his business will also be located in the United States.

In contrast, the Bethels offered witnesses surrounding Gordon's attempts to recover the vessel in The Bahamas and his immigration status. While several persons in The Bahamas may have witnessed what happened during the attempts to recover the vessel, the testimony as to those events are not elements of Gordon's defamation cause of action. The testimony may not even support the truth defense. Whether Gordon acted unprofessionally and aggressively or even trespassed to try to obtain the boat does not prove that he was a "crook."

As we noted in *Nordlict v. Discala,* 139 So. 3d 951, 953 (Fla. 4th DCA 2014):

> [I]t appears that at least one party's witnesses will be inconvenienced or unavailable, depending upon whether the action proceeds in Florida or [the alternative forum]. Under those circumstances, it can hardly be said that the private interests favor the alternative forum, particularly when given the deference which must be paid to the plaintiff's choice of forum under *Cortez.*

**(b) Enforcement of Judgments**

The court presumed the judgment would be enforced in The Bahamas, but the parties offered no information on where a judgment would be enforced, and the court made no findings as to this factor. Therefore, at best, this factor can be considered as immaterial or at equipoise.

**(c) The Practicalities and Expense of Litigation**

Both sides contend that they will incur more expense in litigating in the other forum, and surely that is the case. Gordon's lawyers and witnesses would have to travel to The Bahamas, and the Bethels' lawyers and witnesses would have to travel to Florida. We would suggest, however, that with the increased use of technology, these practical considerations of witness availability and expense may be ameliorated on either side.

What is a more concerning issue is the unavailability of a contingent fee agreement in The Bahamas. This is a case of a Florida resident suing for defamation received in Florida and causing damage to the resident in Florida. Requiring Gordon to employ a Bahamian attorney to bring an action in The Bahamas, where contingent fees are not allowed, will make the defamation claim significantly more expensive for him to pursue. This case is unlike *Spinola,* where the court discounted the unavailability of a contingent fee arrangement for "a foreign party asserting a claim based on foreign events against foreign corporations." 705 So. 2d at 630.

For a Florida resident maintaining an action based upon defamation causing damage occurring within Florida, the unavailability of the contingent fee is a valid factor to consider as a private interest factor. To secure representation in The Bahamas will require a significantly greater outlay of resources than handling a case on the contingency basis. On the other hand, the Bethels will have attorney expenses as defendants

regardless of forum. As a private interest factor, the cost to Gordon as plaintiff is greater in The Bahamas than in his home forum of Florida. Therefore, this factor must weigh in Gordon's favor.

In summary, the trial court was to begin its analysis by balancing the private interests of the parties with the presumption that Gordon, a Florida plaintiff, had chosen a sufficiently convenient forum. With Gordon being a United States citizen and the alternative forum being a foreign country, the Bethels' burden to overcome this presumption was "especially high." *See Cortez*, 123 So. 3d 1096. Here, the Bethels failed to satisfy this burden. We conclude after applying the presumption and considering each private interest factor that the balance of private conveniences actually favors Gordon.

### (3)    Public Interest Factors

Even if private interests would favor the Bethels, we conclude that a proper analysis of public interest factors weigh in favor of retaining Florida as the proper forum. Florida courts must consider the public interests, even where private interests favor the alternative forum. *Nordlicht*, 139 So. 3d at 953 (citing *Cortez*, 123 So. 3d at 1097). The public interest factors focus on "whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it." *Id.* at 954. Courts focus on three principles in this analysis:

> [F]irst, whether the court can protect its docket from cases over which it may be able to assert jurisdiction, but which lack significant connection to the forum; second, whether the court can legitimately encourage the litigation of controversies in the localities where they arose; and third, in considering whether to retain jurisdiction over a case, a court may consider its familiarity with the law which will have to be applied.

*Id.*

The trial court here did not properly consider these factors, because it limited its gaze to the incidents occurring in The Bahamas, rather than focusing on the defamation claims in the complaint. Gordon points out that he is a Florida resident with his business endeavors centered in Broward County. He has clients in the marine industry located in Florida. The defamatory statements were read by Florida residents and received by his clients in Florida. The boat in question was titled in the United States.

11

This case is similar to *Nordlicht*. The plaintiffs in *Nordlicht* alleged that the defendants defamed them by tying them to the Scott Rothstein Ponzi scheme in Florida through an email, and then the defamatory statements were published on an internet blog. 139 So. 3d at 952. Defendants moved to dismiss based on forum non conveniens on the basis that the statements were first made in New York, and all the defendants resided in New York and/or had their principal place of business there. *Id.* With respect to the public interest factor of the forum non conveniens analysis, the defendants argued that the email was transmitted in New York.

On review, we noted that the defendants' statements were broadcast on an internet blog and the plaintiffs alleged that defendants knew and intended the information reach a wider audience. *Id.* at 954. Relying on *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010), for the statement that the tort of defamation in Florida occurs by the posting of defamatory statements on a website accessible in Florida and accessed in Florida, we held that public interest factors favored Florida as the convenient forum because of its nexus to the defamation, the damages, and the Rothstein Ponzi scheme:

> As this defamation can be considered a tortious act directed at Florida and its residents, the courts of Florida should be open to its resolution. Thus, consideration of the public interest factors does not compel litigating this action in an alternative forum.

*Id.* at 954.

In this case, similar to *Nordlicht*, the Facebook post was on a website accessible to Floridians and accessed in Florida. Further, Florida has a strong nexus to the damages since Gordon has alleged that he is a resident of Florida with business in Florida, and it is his character and his business that has suffered damage. Florida also has a nexus to the underlying facts of the vessel's ownership. Accordingly, the courts of Florida should be open to resolve this case.

The Bethels argue that Bahamian courts have a strong public interest in adjudicating this dispute because the events occurred in The Bahamas, involved Bahamians, and likely requires consideration of Bahamian law on several issues involving the vessel's salvage. They assert that the Bahamian government has a public policy interest in ensuring that their salvage laws are enforced and in protecting Bahamians' free speech. The need to interpret foreign law, however, is not dispositive in considering the public interest factor. *See Sun Tr. Bank v. Sun Int'l Hotels, Ltd.*, 184 F.

12

Supp. 2d 1246, 1266 (S.D. Fla. 2001) (denying dismissal because "there are no language barriers to the Court's understanding of Bahamian law and . . . Bahamian law is derived from English common law and has many similarities to Florida law."); *Reid-Walen v. Hansen*, 933 F.2d 1390, 1401 (8th. Cir. 1991) (declining to dismiss case governed by Jamaican law noting that Jamaican law is descended from British law and contains concepts similar to our law with no language barrier). As to the Bahamian interest in free speech for its residents, Florida has an equally strong interest in protecting its citizens from defamatory speech.

At best, both countries have an interest in this suit, but the Bethels must overcome the heavy presumption in favor of the plaintiff's choice of forum. Just as in *Nordlicht*, the public interest factor does not compel litigating this case in a foreign forum.

### Conclusion

The Bethels, as defendants, failed to overcome the heavy presumption in favor of Gordon's choice of forum, as plaintiff, particularly where he is a Florida resident seeking relief in his home forum for a tort occurring in Florida with damages accruing in this state. The court abused its discretion in dismissing his claim. We reverse and remand for reinstatement of the complaint against the Bethels.

*Reversed and remanded.*

GERBER and LEVINE, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***